*Fairfield,*
June, 1852.

Gold
*v.*
Judson.

GOLD and wife *against* JUDSON and others.

Though, for some purposes, a will is considered as speaking from its execution, the time of its inception, and for others, from the death of the testator, the time of its consummation; yet the general rule is, that it speaks from the death of the testator, where there is nothing in its language indicating a different intention.

Where the testator, after giving portions of his estate to each of his brothers and sisters, and a nephew, or to the representatives of such as were deceased, devised to the heirs of each of his brothers and sisters, including the heirs of his sister *N,* the residue of his estate, to be equally divided between said heirs, each individual having an equal portion of the same; *N* died before the death of the testator, leaving a son, who died before the execution of the will, and he left a daughter, *C,* who is a party to the present suit; on an appeal from a decree of probate, it was held, 1. that the will spoke from the death of the testator; 2. that as *N* and her son, the father of *C,* were dead, at the time of that event, *C* was the *heir* of *N,* both in its technical and its popular sense; 3. that though the construction of any term used in a will, must be made with reference to all its parts, so that they shall, if possible, be allowed to have effect, yet to give the word *heir* a construction different from its usual and legal acceptation, the intention of the testator must be clear and decisive; 4. that the fact, that *C* and her sister took, under the will, a distinct legacy of 300 dollars, that this provision was inserted before any disposition was made of the residue, and that *C* is described, in one part of the will, as heir of her father, and in another part, as heir of her grand-mother,—neither of these considerations, nor all combined, were sufficient to vary the construction of "heirs of *N,*" so as to preclude *C* from taking under the residuary clause; 5. that *C,* and the other devisees under that clause, take *per capita.*

THIS was an appeal from a decree of the court of probate for the district of *Bridgeport,* passed in *January,* 1851, or during distribution of the estate of *David Judson,* deceased.

The decree appealed from was as follows: "Estate of *David Judson,* late of *Huntington,* in said district, deceased.

Whereas it appears from the settlement of the administration account with said estate, that there is remaining for distribution in the hands of the administrator with the will annexed, the sum of one hundred and seventeen dollars, fifty-seven cents, in promissory notes, and six thousand, two hundred and ninety-eight dollars, ninety-nine cents, in cash; that sum including the avails of the real estate of said deceased, sold and conveyed, by all the persons claiming to be interested therein, under and by virtue of the provisions of the will of said deceased, making the whole amount for dis-

tribution six thousand, four hundred and sixteen dollars, fifty-six cents :—

Ordered, that said estate be distributed, and that Messrs. *Christopher N. Shelton, Zachariah L. Shelton* and *Joseph Tomlinson,* of said town of *Huntington,* judicious, disinterested persons, be, and they hereby are, appointed distributors, and being first duly sworn, they are authorized and directed to assign, set out and distribute said estate to and among the several persons entitled to receive the same, under and according to the provisions of the last will and testament of said deceased, and according to law ; that is to say, to set out and distribute the same, in equal shares and proportions, to and among the following persons, *viz., William A. Judson, Ann M. Gibbs,* and *Rebecca B. Judson,* children of *Agur Judson; Nancy T. Judson* and *Hezekiah T. Judson,* children of *Roswell Judson,* deceased ; *Caroline Simons,* daughter of *Nancy Lockwood,* deceased ; *Woolsey G. Sterling, Margaret A. Sterling,* and *Daniel H. Sterling,* children of *Hannah Sterling ;* and *Alexander F. Sterling,* son of *Sally Sterling ;* and make return of their doings to this court."

The following is a transcript of the testator's will :

" I, *David Judson* of *Huntington,* do ordain this to be my last will and testament, in manner as follows ; I give to the heirs of my nephew, *Charles Lockwood,* deceased, *viz., Caroline Lockwood* and *Nancy Lockwood,* the sum of six hundred dollars, to be equally divided between said heirs.

I give to the heirs of my brother, *Philo Judson,* deceased, the sum of fourteen hundred dollars, to be equally divided between said heirs.

I give to my sister *Sally Sterling* the sum of twelve hundred dollars.

I give to *Obed,* a coloured man, living in *Watertown, Litchfield* county, *Connecticut,* son to *Asahel,* deceased, who was formerly servant to *Agur Judson,* of *Huntington,* deceased, the sum of one hundred dollars.

I give to *Silvia,* a coloured woman, living in *Watertown, Litchfield* county, *Ct.,* who was formerly a servant to *Agur Judson,* of *Huntington,* deceased, the sum of fifty dollars.

I give to the heirs of my brother, *Roswell Judson,* deceased ; the heirs of my sister, *Nancy Lockwood ;* the heirs

*Fairfield,*
June, 1852.

Gold
*v.*
Judson.

of my brother, *Agur Judson;* the heirs of my sister, *Hannah Sterling;* and the heirs of my sister, *Sally Sterling*, the residue of my estate, to be equally divided between said heirs, each individual alluded to having an equal portion of the same.   In witness whereof, I hereunto set my hand and seal, the 23d day of *July*, A. D. 1840.

*David Judson.*   [L. S.]

In presence of *Edwin Shelton, Nathan W. Blackman, Sally Beardslee.*"

The appellants assigned the following reasons of appeal, alleging, that at the date and execution of said will, the testator had the following brothers and sisters then living, *viz., Agur Judson, Hannah Sterling*, wife of *Daniel Sterling, Sally Sterling*, wife of *Frederick A. Sterling*, and *Nancy Lockwood*, a widow.   He had had two brothers also, who were then deceased, *viz., Philo Judson*, and *Roswell Judson.*

*Nancy Lockwood* died about eight years afterwards, and before the death of the testator.   She had two children,— *Charles Lockwood*, and *Caroline*, the wife of *Samuel Simons*, now deceased.   *Charles Lockwood* died before the execution of the will, leaving two daughters, *Caroline*, now Mrs. *Gold*, and *Nancy*, now the wife of *Henry Sanford.*

*Philo Judson* left six children, and *Roswell Judson* two.

Mrs. *Hannah Sterling* has three children ; *Agur Judson*, three ; and Mrs. *Sally Sterling*, one ; all of whom were born before the date of the will, and are still living, except *Edward*, son of *Philo Judson*, who died before the testator, and *Hezekiah*, son of *Roswell Judson*, who died since the death of the testator.

The appellants therefore aver, that it was the true intent and meaning of the testator, in the residuary clause of his will, to devise and bequeath, and that he did thereby devise and bequeath to this appellant, *Caroline Gold*, as one of the heirs of the said *Nancy Lockwood*, the one-twelfth part of the residue of his estate, specified in said residuary clause, and that said court of probate should have decreed that the same should be distributed to her accordingly ; or if not, that the testator, by said residuary clause, devised and bequeathed to this appellant and her said sister, jointly as children and representatives of their father *Charles Lockwood*, and thus as heirs of said *Nancy Lockwood*, the one undivided half of the share given to the heirs of *Nancy*

*Lockwood*, the said share being one-fifth of said residue; and that the court of probate should have decreed a distribution of the same to them accordingly. The appellants therefore say, that said decree ought to be reversed and set aside, and that the court of probate should be directed to make a decree in conformity with the claims of the appellants.

*Fairfield,*
June, 1852.
———
Gold
*v.*
Judson.

To the reasons thus assigned, the appellees demurred.

The case was reserved for the advice of this court as to what judgment should be rendered thereon.

*Hawley* and *Dutton*, for the appellants, contended, 1. That a devise to the *heirs* of a person, whether living or dead, is a devise to the person, who would take by distribution. 2 *Wms. Exrs.* 727.

A legacy of personal property to *A*, " and failing him, by decease before me, to his heirs," goes to the next of kin living at testator's death. *Vaux* v. *Henderson*, 1 *Jac. & W.* 388. *n. c.* *Holloway* v. *Holloway*, 5 *Ves.* 399.

As to a legacy to such person or persons as shall be my heir or heirs at law, the master of the rolls said, " this is personal property, and it is said, that though heirs, &c., have a definite meaning as to real estate, yet as to personal estate, it must mean such person as the law points out to succeed to personal property : I am much inclined to think so."

A devise of a residue "among legal heirs," means among legal distributees. *Edling* v. *Long*, 10 *Ala.* 203. So "next of kin, or heirs at law." *Lowndes* v. *Stone*, 4 *Ves.* 649. *Heirs* means issue or descendants. *Per Ball, J.* 5 *Barr*, 266. *All the heirs* means children and grandchildren. *Burkins'* appeal, 3 *Barr*, 304. The word " heir" is to have its ordinary and natural sense, unless qualified by the will. *Mounsey* v. *Blaimise*, 4 *Russ. Ch.* 384. 3 *Cond. E. Ch.* 718. 2 *Wms. Exrs.* 726. 5 *Ves.* 401,402. 2 *Jarm.* 743. [or 526.]

2. That an additional devise to one of the persons answering the description, will not except such person. The devise of a residue, to be equally divided amongst the heirs of brother *Ford*, the heirs of my sister *Nancy Stowe*, the heirs of my sister, *Sally Ward*, deceased, and nephew, *Levi Ward*, being a son and heir of *Sally Ward*, was held to give *Levi* a quarter, and also a share as heir of *Sally Ward*. *Stowe* v. *Ward*, 3 *Hawks*, 604. A devise in trust for *A* for life, of 5000*l.*, and after her death, to the heirs at law of

the testator, of whom *A* was one, was held to vest a share of the reversion in *A.* *Holloway* v. *Holloway,* 5 *Ves.* 399. *Per* Lord *Alvanley,* Master of the Rolls, 8 *Ves.* 42. *Doe* d. *Garner* & al. v. *Lawson* & al. 3 *East,* 278.

3. That the plain natural import of words is not to be controuled, except by explicit provisions in the will to the contrary. *Philipps* v. *Chamberlaine,* 4 *Ves.* 57. *Per* Master of the Rolls. *Holloway* v. *Holloway,* 5 *Ves.* 399. S. C. referred to 8 *Ves.* 42. 2 *Sim. & St.* 214.

4. That the testator obviously intended to provide for *all the descendants* of the brothers and sisters named in his will.

5. That the description of the appellants, as the heirs of *Charles Lockwood,* does not exclude them as the heirs of *Nancy Lockwood,* but the reverse. The heirs of *Charles,* would, of course, be the heirs of his mother *Nancy.*

6. That the devisees took *per capita.* The devise gives it so expressly. Such would be the legal construction. *Stowe* v. *Ward,* 3 *Hawks,* 604. *Blacklin* v. *Webb,* 2 *P. Wms.* 383. *Wild* v. *Bradbury,* 2 *Ves.* 705. *Northy* v. *Strange,* 1 *P. Wms.* 340.

7. That the *residue* is a *family* division. The prior legacies are only special favours.

*Jordan* and *Abernethy,* for the appellees, remarked, *in limine,* that the words "heirs, &c.," in the last clause of the will, are words of description or purchase, and not words of limitation. The estate was both real and personal, and the heir at law cannot take by the name of *heir,* in the life of his father. *Nemo est haeres viventis. Jac. L. Dict. tit.* Heir. 2 *Leon.* 70. *Heard* v. *Horton,* 1 *Denio,* 165. *Hob.* 30. *Bla. Com.* in loc. In strictness perhaps, a devise to the heirs of those living, (but not appearing to be by the will,) would be absolutely void; the word "heirs," not being deemed descriptive, while that to the heirs of *Sally Sterling,* who appears by the will to be alive, would be valid, the word "heirs" in the latter case, being sufficiently descriptive. 1 *Denio,* 165. But the children of *Sally Sterling,* or those who are well described, have not however appealed, and that question is not now before the court.

They then contended, 1. That the intention of the testator, (if not illegal,) is the law of the will—the polar star. And the court will ascertain and execute it, if possible, how-

ever inartificially or obscurely expressed. *Ward* on *Lega-cies*, 194. *Lovelass* on *Wills*, 274. 2 *Pow.* on *Dev.* 1. 5. 4 *Kent's Com.* 534. The court will put that construction on the language which upholds, rather than that which defeats, the will. Although the testator uses technical words, he will not be presumed to employ them in their legal sense, when the context shows he did not design so to employ them. *Hodgson* v. *Ambrose, Doug.* 341. *Philips* v. *Garth*, 3 *Bro. C. C.* 68. *Roe* d. *Conolly* v. *Vernon* & al. 5 *East*, 51. See Lord *Ellenborough's* opinion, *p.* 78. As already seen, the word "heirs" of a living person, in law has no meaning. But "heir" is a term frequently used in common language, to denote the child of a living parent. *Darbison* v. *Beaumont*, 1 *P. Wms.* 229. *Heard* v. *Horton*, 1 *Denio,* 170. *Thomas* v. *Bennet*, 2 *P. Wms.* 342. *Loveday* v. *Hop-kins, Amb.* 273. Lord *Beaubieu* v. Lord *Cardigan, Amb.* 533. It is never so used to designate a grand-child.

2. That in this case, it was the intention of the testator to give the *residuum* of his estate to the children of his brothers and sisters mentioned in the last clause of his will, but not to their grand-children, because such is the common acceptation of the terms employed; because such is consistent with the authorities above cited; and moreover, because the grand-children of Mrs. *Lockwood* had been once provided for, by the name of "the heirs of *Charles Lock-wood*," and it seems absurd to suppose that he intended to provide for them again, under the denomination of "heirs of their grand-mother, *Nancy Lockwood*."

There is nothing in the will denoting an intention to prefer the grand-children to the children, as they would be, if they first take their legacy, and then share equally *per capita*, taking between them double the share of any living child.

3. That the legal construction of the word "children" accords with its popular signification, and does not comprehend grand-children; and though the precise word children is not used, the word "heirs," which means the same thing, will receive the same construction. *Duhamel* v. *Ardovin*, 2 *Ves.* sen. 162. *Reeves* v. *Brymer*, 4 *Ves.* 698. *Boyle* v. *Hamilton, Id.* 439. 2 *Pow* on *Dev.* 298.

ELLSWORTH, J. We think the order of the probate court

*Fairfield,*
June, 1852.

Gold
*v.*
Judson.

is erroneous, and should be set aside : the error is, in excluding the appellant, *Caroline E. Gold,* from an equal share in the *residuum* of *David Judson's* estate.

The language of the will, giving this *residuum,* is as follows : " I give to the heirs of my brother *Roswell Judson,* deceased, the *heirs* of my sister *Nancy Lockwood,* the heirs of my brother *Agur Judson,* the heirs of my sister *Hannah Sterling* and the heirs of my sister *Sally Sterling,* the residue of my estate, to be *equally* divided between said heirs, each individual alluded to having an equal portion of the same."

One of the principal questions raised in the case, is, from what date the will is to be held to speak ; from its *execution,* or the death of the testator ?  We had occasion to examine this question in the case of *Canfield's* appeal, tried at *Litchfield,* on the present circuit.   *Canfield* v. *Bostwick* & al. ante, 550.   We there held, that the general rule is, that a will speaks from the *death* of the testator.   We see nothing that distinguishes this from that case, or that relieves it from the rule stated.

For some purposes, a will is considered to speak from its execution, and for others, from the death of the testator ; the former being the period of inception, and the latter that of the consummation of the instrument.   To determine to which of these the language points, is not generally attended with difficulty, and certainly not, where the language used, is, as in this case, general, and not limited, and is broad enough in describing the subject matter of the bequest, to embrace all the *residuum,* and as to the devisees, all the persons who claim to take.   Wherever a testator refers to an actually existing state of things, his language should be held as referring to the date of the will, and not to his death, as this is then a prospective event.   Such, it is clear, is the construction of the word *now.*   Thus, to the descendants *now living* of a person, means those living at the date of the will, exclusive of such as come into being between that period and the death of the testator.   *Crosby* v. *Close, Amb.* 397.   *Abney* v. *Miller,* 2 *Atk.* 593.   *Blundell* v. *Dunn,* 1 *Madd.* 433.   *All Souls College* v. *Coddrington,* 1 *P. Wms.* 597.   And the same is true, where the word *now* is combined with a term which could not have full effect according to its technical import, unless used prospectively, as

in the case of a devise to the *heir male* of the body of *A*, *now living;* under which the heir apparent of *A*, living at the date of the will, has been held to be entitled.   1 *Eq. Ca. Abr.* 214.   1 *Vent.* 334.

So words in the present tense have a similar effect : thus, all the property I am possessed of, at this date, (5 *Ves.* 816.) the devisee takes only what the testator then had.   So in *Bridgeman* v. *Dove*, 3 *Atk.* 201. it was held, that a charge of all the debts I *have* contracted since 1735, extended to all debts owing by the testatrix, at her decease, including those she contracted after the period referred to.   So in the description of the thing given, and the person or persons to whom given, it may be such as to embrace only the specific thing or persons described ; as thus, the stock I *now* hold in *Hartford Bank*, or the children of my brother *already* born. But if the language is general, not specific, and not limited, the will speaks from the testator's death, and of course disposes of whatever property the testator had, at that time, or to such persons as answer the description.   So a general bequest of any particular species of personal property, as "my furniture and effects," has been held to embrace property of this description belonging to the testator at his death. 3 *P. Wms.* 325.   1 *Eq. Ca. Ab.* 200.   A will also is held to speak from the death of the testator in reference to gifts to classes, or fluctuating bodies of persons, as to children, descendants, or next of kin, which apply to the persons answering the description, at the death of the testator, irrespective of those to whom the description was applicable, at the date of the will, but who died in the testator's life-time. And where property is given to classes, or fluctuating bodies, to be divided at a *future time*, those *in esse*, at the testator's death, answering to the description, will take the whole, and the estate will open for others of the class born afterwards, but before the period of distribution.   *Bowers* v. *Porter*, 4 *Pick.* 198. and the cases there cited.   5 *Cush.* 153. 232.

The language of the present statute in *England*, (1 *Vic.* 26.) is, " That every will shall be construed with reference to the real estate and personal estate comprised in it, to speak and take effect as if it had been executed immediately before the death of the testator, unless a contrary intention shall appear by the will."   This statute was passed to get

rid of the principle in their law, that a will spoke from its date, as to real estate ; for by their law, no real estate passed by a will, but what the testator had, when he made his will ; but as to personal property, the law of *England* and of this state now is, and has ever been otherwise. We have a statute in relation to real estate, substantially like the *English* statute above referred to.

If, then, this will is to speak from the death of *David Judson,* the testator, the next enquiry is, did the appellant, *Caroline A. Gold,* at the *death of the testator,* answer the description, "the heirs of my sister, *Nancy Lockwood?*" We think she did ; the said *Nancy* was dead, and the appellant and her sister were her grand-children, and *Charles Lockwood,* their father, was likewise dead. Why then is she not an heir of the said *Nancy?* She answers fully to the description.

There was no question made, on the trial, but that the word "heirs" was used in this will, as a word of purchase, *descriptio personæ.* Certainly as to the "heirs" of *Charles Lockwood* and the "heirs" of *Philo Judson,* and the "heirs" of *Roswell Judson,* this is so ; for the will speaks of the ancestors as dead ; and so a legacy of 1,200 dollars is given to *Sally Sterling,* and then the heirs take their share in their own right. Doubtless this construction of the word is correct throughout ; and we are not disposed to make any distinction to the contrary, if it were less obvious. If the word "heirs" was held to be used otherwise, and in its strict technical sense, as one of limitation, and not of purchase, it might be difficult to see how the heirs of *Hannah Sterling* and of *Agur Judson* and of *Sally Sterling* can take at all ; for these several parents were living at the death of the testator ; and according to the familiar maxim, *nemo est hæres viventis,* there were no such heirs in being. *Bowers* v. *Porter, 4 Pick.* 208. This distinction is here, however, of no importance ; for the appellant's father and her grand-mother, *Nancy Lockwood,* were both dead, at the death of the testator ; so that she was the heir of both, according to the most technical accuracy.

If, then, the appellant was heir of *Nancy Lockwood,* she takes by the description of heir in the will, unless there be something in the other parts of the instrument, which shows that the word "heir" is not used in its usual and legal acceptation. On the argument it was contended, that this was

the case. But evidence of such intent must be clear and decisive, or we cannot admit it to have such an effect. We are bound to suppose the testator used language in its usual and legal sense, and a devise to the heirs of a person *generally*, does not mean *some* of them, but *all* of them. The burden of proof lies upon the appellees.

And there is another familiar rule of law, which is applicable to this case, and must not be overlooked, *viz.*, all parts of the will must, if possible, be allowed to have effect.

Now, the three circumstances which have been referred to, to prove the words " heirs of *Nancy Lockwood*," do not include the appellant and her sister, are, first, that the appellant and her sister, as the descendants of *Charles Lockwood*, take, by the will, a pecuniary legacy of 300 dollars; and if said *Charles* had lived, so as to have taken this portion himself, it is said, it would have been about 600 dollars. This accidental circumstance is of little weight; for, at the best, the amount of the testator's property, at the date of his will, might have been different from what it was at the time of his death, and so the 600 dollars gives us no satisfactory rule. And so we perceive that the families of the brothers and sisters are not to participate with exact equality. *Sally* had a legacy of 1,200 dollars; yet her one child takes, as her heir, as much as the children severally of any of the other families, &c. We know not, nor can we speculate upon, the motives and purposes which influenced the testator in distributing his estate as he did, beyond what we find expressed in the will itself. We have no right to assume, that 600 dollars given to these grand-daughters, was, in the view of the testator, *to exclude* them from taking their shares of the *residuum* under the clear and unambiguous description of " the heirs of *Nancy Lockwood*."

Nor does the second circumstance urged strike us with any more force, *viz.*, that the appellant has this legacy of 300 dollars given her, in the first instance, in the will, and therefore she is not to participate in the *residuum*. Nothing is more common than for a testator to give legacies to the objects of his bounty, for the very purpose of making a distinction in their favour, and then order the *residuum* to be equally divided among all the devisees. He may have rendered unequal assistance to them while in life, and takes this method,

*Fairfield,*
June, 1852.

Gold
*v.*
Judson.

as the last opportunity, to equalize their shares ; or he may have thought it judicious, or there may have been other considerations, for this seeming partiality. The case of *Holloway* v. *Holloway,* 5 *Ves.* 399. if authority was necessary, is most decisive. The testator devised 5,000 *l.* in trust for his daughter for life, and then 1,000 *l.* of it after that, for another person, and the 4,000 *l.* in trust " for the person or persons who should be his heirs at law." She and two other daughters were the testator's heirs at law. Sir *R. P. Arden,* M. R., held the heirs, at the time of the testator's death, to be entitled, from the absence of any expression showing that these words were something very especial. See 8 *Ves.* 42. *Doe* d. *Garner* & al. v. *Lawson* & al. 3 *East,* 278.

The *third* circumstance urged, is the fact, that these granddaughters are, in the fore part of the will, called heirs of the testator's nephew, *Charles Lockwood,* and, it is said, ought not, therefore, in the after part of the will, be held to be heirs of the grand-mother. It is true, they are first called " heirs," but in the same clause, they are called children, and were it of importance, the language used in both places is matter of description, and nothing more. Certain it is, they are not the less heirs of *Nancy Lockwood,* and none the less included in that description, though they be heirs of said *Charles.* They are heirs of both ; and this cannot be denied or evaded ; and any inference to the contrary, drawn from this slight circumstance, is mere speculation.

We need not remark, that the devisees are to take *per capita,* this being the express language used in the will.

We advise, that there is error in the decree of probate, and that it be reversed.

In this opinion the other judges concurred.

Decree reversed.