WILLIAM BELCHER, EXECUTOR (NATHAN BELCHER, ADMINISTRATOR, C. T. A., D. B. N.) *vs.* HARRIET W. PHELPS ET ALS.

*Third Judicial District, Bridgeport, October Term, 1928.

WHEELER, C. J., MALTBIE, HAINES, HINMAN AND BANKS, JS.

*Transferred from the First Judicial District.

Argued November 7th, 1928—decided January 30th, 1929.

*Nathan Belcher,* for the plaintiff.

*J. Dwight Dana,* for the children of Elizabeth P. Soule.

*James E. Wheeler,* for the grandchildren of Elizabeth P. Soule.

*Ernest A. Inglis,* for Lois J. Haag and Grace N. Phelps.

*Charles B. Waller,* for the children of George W. Phelps.

*Charles A. Pelton,* for Harrison F. Phelps.

WHEELER, C. J. The will of Judge Phelps begins with the declaration that the testator makes his will and devises and bequeaths all of his estate. First, he makes three bequests aggregating $4,000 and three annuities aggregating $2,900. These are followed by a gift in trust for his grandson, Harrison F. Phelps, and by a gift to the testator's wife of the use for life of the residue of the estate. The ninth of these unnumbered paragraphs reads: "To the children of my niece Elizabeth P. Soule of Dorchester, Massachusetts, in equal shares, one-half of the residue of my estate, to them and each of them and their respective heirs and legal representatives forever."

At this point we consider the questions which have arisen as to the interest which the children of the testator's niece Elizabeth P. Soule took under this provision. Four children of Mrs. Soule survived the testator. This paragraph of the will is phrased in appropriate words to create an estate in fee simple in these children in one half of the residue of the testator's estate, and to vest in them in equal shares this one half upon his death. All of the eight legacies, annuities and bequests which precede the gift to the children of Mrs. Soule took effect upon the death of the testator, and that this is the necessary legal construction to be

given to this provision for these children is so clear that all of the parties concede that vested remainders were created in these children on the death of the testator. The gift to the children of Mrs. Soule vested in them an indefeasible right in this one half of the residue upon the testator's death and the right to the use and enjoyment of the one half upon the death of the testator's widow. The necessary legal construction to be given this provision of the will is that the children took at the testator's death a vested remainder unless some other portion of the will compels another construction.

We have held, repeatedly, that if a future event or time is annexed to the substance of the legacy or gift the vesting is postponed to the time named, but if the future time or event is annexed to the time of payment only the legacy or gift vests immediately. "Where a legacy is given to a person to be paid at a future time, it vests immediately; but where it is not given until a future time it does not vest until that time." *First National Bank* v. *Somers*, 106 Conn. 267, 273, 274, 137 Atl. 737; *Wallace* v. *Wallace*, 103 Conn. 122, 134, 135, 130 Atl. 116; *Austin* v. *Bristol*, 40 Conn. 120. The gift to the children of Mrs. Soule made no provision for the contingency of any of these children dying before the testator "leaving lineal descendants." A later paragraph of the will provided for this contingency in these terms: "If any children of my said niece Elizabeth P. Soule, or my said grandson Harrison F. Phelps, or my said nephew George W. Phelps, shall die before the legacy to them shall take effect leaving lineal descendants surviving them, the portion that would have gone to such parent if living, I bequeath and devise to such lineal descendants to severally take according to the provisions of the statutes of distribution of this State." The words "the legacy . . . shall take ef-

fect" in this paragraph obviously is the equivalent of the legacy . . . shall vest. The paragraph applies to the children of the testator's niece, grandson and nephew. The condition of its operation is the death of a beneficiary before the legacy of the children of the members of the three classes has vested and the leaving of lineal descendants. This contingency never occurred since all of the four children survived the testator. The gift to the children of Mrs. Soule did vest upon the testator's death. Our construction is in harmony with our accepted rule, "that when in a will an estate in fee is followed by an apparently inconsistent limitation, the whole should be reconciled by reading the latter disposition as applying exclusively to the event of the prior devisee in fee dying in the lifetime of the testator"; *Walsh* v. *McCutcheon*, 71 Conn. 283, 287, 41 Atl. 813; *Scanlin* v. *Peterson*, 105 Conn. 308, 313, 314, 135 Atl. 394; and also with the rule, that the substitutionary gift to the lineal descendants will not destroy the absolute gift to the more immediate relatives unless that intention clearly appears in language which is free from ambiguity. *Austin* v. *Bristol*, 40 Conn. 120; *Burnham* v. *Burnham*, 101 Conn. 529, 533, 126 Atl. 704.

The guardian *ad litem* of the grandchildren of Elizabeth P. Soule contends that the gifts to these children took effect in point of enjoyment at the death of the last annuitant subject to be divested by the substitution of the lineal descendants if they predeceased the last annuitant, but that since there is no indication in the will that the surplus income should accumulate, and no reason for such accumulation after the annuitants are provided for, the children of Mrs. Soule should take the surplus. While conceding this, the guardian maintains that the principal of this one half of the residue must be held intact until the death of

the last annuitant. The two positions are somewhat inconsistent. Nowhere in the will do we find indication that the enjoyment of this one half of the residue by the children is to be postponed beyond the death of the widow life tenant; in fact, the will discloses a contrary intent. It would be unreasonable to conclude that the testator, while manifesting a clear intent to give to the children of Mrs. Soule the enjoyment of this one half of the residue, would postpone the vesting of the principal to the death of the last annuitant and thus restrict the enjoyment of the principal to the unborn children of these children, and if there were none, to collateral lineal descendants. No provision is made in the will for the accumulation of income and no indication disclosed of other intent of the testator than for the distribution of this one half to the children of the testator's niece upon the death of the tenant for life. The situation is practically that in *Colonial Trust Co.* v. *Brown,* 105 Conn. 261, 284, 135 Atl. 555, where we define the correct procedure in such a contingency: "In such a situation, it is well settled that the proper course to adopt is to set aside for the trust so much of the fund as will assure the production of income sufficient to pay the annuities, and distribute the balance of the principal as provided in the residuary clause of the will. . . . The amount to be retained by the trustee should be ample to assure the production of income sufficient to pay the annuities, and must be determined by it subject to the control which the Court of Probate will exercise in the approval of the trustee's accounts. . . . Should the fund retained produce an income in excess of that needed to pay the annuities, that excess must be paid from time to time, as we have already indicated, to the beneficiaries under the residuary clause or those who may come to stand in their shoes."

The will opens with the declaration of a devise and bequest of all of the testator's estate; practically it is divided into two halves, the first disposing in clear terms of one half of the residue to the children of Mrs. Soule, the second disposing of the second half of the residue and in its treatment being wholly dissimilar from that of the first half. The disposition of the two halves is said by the representative of the children of Mrs. Soule to be mutually independent. The terms of the disposition of the two halves justify this description. After the gift to the children of Mrs. Soule the will proceeds: "On the decease of the said Harrison F. Phelps I devise and bequeath to his children, in equal shares, if he shall leave any surviving him, the other one-half of the residue of my estate, to them and each of them and their respective heirs and legal representatives forever. . . . If he shall leave no surviving children or lineal descendants of them, I bequeath and devise the other one-half of the residue of my estate in equal shares to the children of my late nephew, George W. Phelps, to them and each of them and their respective heirs and legal representatives forever."

The remaining questions for solution are directed mainly to the inquiry when and in whom vests the right to the principal of the other one half of the residue, and the right to the enjoyment of the income from this one half. The representatives of the children of Harrison F. Phelps and the children of the testator's nephew, George W. Phelps, agree in claiming that the bequests to the children of Harrison F. Phelps and their descendants were bequests to them as a class which vested in the class upon the death of the testator, or thereafter when any member of the class came into being, subject to divesting at the death of Harrison F. Phelps, in which event the share would vest in the

children of the testator's nephew, George W. Phelps. This is a misapplication of our rule, which determined the time when the half of the residue vested in the children of Mrs. Soule, and must likewise determine the time when the other half of the residue vested. Seldom will be found a plainer example of the annexation of the future event to the substance of the gift than in the provision: "On the decease of the said Harrison F. Phelps I devise and bequeath to his children . . . the other one-half of the residue of my estate." The gift takes effect upon his decease, that is, upon the future event upon whose coming the existence of the gift is made to depend. *Austin* v. *Bristol, supra.* It is beyond dispute, if Harrison F. Phelps died leaving no surviving children or lineal descendants of them, the children of George W. Phelps would take in equal shares the other one half of the residue. And if any child of George W. Phelps shall die before the legacy to them shall take effect, leaving lineal descendants, the portion that would have gone to such child would by the terms of the will go to such descendants to take according to the provisions of the statute of distributions.

Making every reasonable effort to construe these words of contingency as applying to the time of payment and as vested rather than as contingent and at a future time or event, as *Dale* v. *White,* 33 Conn. 294, admonishes, we are unable to read the words of the testator as vesting the other half on the death of the testator, instead of on the death of Harrison F. Phelps as the will specifically provides. None of our cases cited, as we read them, conflicts with the application we make of this rule. At this point the argument in behalf of these parties diverges. The representative of the children of Harrison F. Phelps claims that while the right to the enjoyment of the principal is post-

poned to the date of the death of Harrison F. Phelps, the income belongs to and should be paid to the members of the class in which the principal is vested. The proposition necessarily rests upon the further proposition that the members of this class took a vested interest on the death of the testator, which we have seen is a fallacious assumption. Three methods of disposing of the income, counsel claim, are possible. It may be accumulated, or become intestate estate, or be paid to the children of Harrison F. Phelps from the death of the testator as it may accrue. The method by way of accumulation is dismissed by counsel for the reasons that the will, neither in terms nor by implication, provides for or suggests an accumulation and the law does not favor it. By themselves these reasons are conclusive. If they were not, we should be obliged to determine whether the limitation imposed upon the enjoyment of this property through such accumulations was not an unreasonable restraint on alienation and in conflict with settled principles of public policy. *Colonial Trust Co.* v. *Brown,* 105 Conn. 261, 279, 135 Atl. 555. Counsel insist the income did not become intestate estate for the reasons that it is an incident to the gift of the other one half of the residue and that no part of an estate will be held to be intestate if an interpretation of the will leading to this conclusion can be avoided. We leave this issue for a later part of the opinion.

The disposition of the income by way of accumulation and by way of intestate estate being eliminated, counsel conclude that the only alternative is that the income should be distributed to the children of Harrison F. Phelps as it accrues. The foundation of this position is that the gift to the children of Harrison F. Phelps vested at the death of the testator carrying with it the income as an incident to the right to the princi-

pal. If it were true that this gift vested at the death of the testator it would not have been an unreasonable claim that the income became an incident of the principal and that *Hoadley* v. *Beardsley,* 89 Conn. 270, 93 Atl. 535, was an authority for this contention. The argument falls because the vesting in right will occur on the death of Harrison F. Phelps and the right in enjoyment of principal and income cannot exist until after that event. In conflict with the claim of the children as to the accumulation of the income is the contention in behalf of the children of the nephew, George W. Phelps, that the proper construction of the will requires the conclusion that the income should accumulate until the death of Harrison F. Phelps, basing the argument upon the construction to be given to residue in the gift of the other half of the residue as interpreted in *Stanley* v. *Stanley,* 108 Conn. 100, 109, 142 Atl. 855, to include "every part of the estate not otherwise disposed of by the will."

We have earlier expressed the opinion that the testator has not, either in express terms or by fair implication, intended a result which would impose a restraint on alienation of property which must be held to be either unreasonable, or near to it.

We take up the final method of the disposition of the income, the claim in behalf of Harrison F. Phelps that the income from the death of the testator to his own death became intestate estate with himself the sole beneficiary as the next of kin. We repeat. There is no disposition of the income either expressly or by implication in the will, nor disposition of the principal until the death of Harrison F. Phelps. No disposition of the income under the will has been suggested which is valid, and none occurs to us other than that it became intestate estate. As intestate estate it will go to the testator's grandson, his only heir at law. It is true

his will evinces his intention to give the principal of this one half of the residue to the children of his grandson on his death and if none survived to the children of his nephew, thus excluding his grandson from the right of enjoyment of the principal of this sum. It is not true that the testator gave or intended to give the enjoyment of the income of the fund to the children of his grandson. Nor is it true that there is any clear indication that the testator intended to exclude his grandson from the enjoyment of this income. The mere fact that he provides specifically for his seventeen year old grandson through an annuity and a bequest in trust does not permit, much less compel, this inference. The disposition of the income from this one half of the residue resolves itself to a choice between the accumulation of the income from the testator's death until the death of Harrison F. Phelps—a period of perhaps seventy-five years—and the holding that this income is intestate estate. During the period of accumulation the grandson, his wife and children would be deprived of this income, the education of the children probably neglected, their upbringing hampered and the station in life and careers of the grandson and his wife and children seriously affected. If the children should predecease Harrison F. Phelps they would have received no benefit from this fund. No testator of reasoning mind and normal affection for his own kin would intend to deprive, not only his only heir at law and grandson, but also his unborn great-grandchildren of the enjoyment of all of this income during the period of their lives, when it would mean the most to their careers and position in life, and perhaps deprive them of all share in it for the benefit of collateral relatives, and in no event conferring this bounty upon them until the advanced years of their lives. If, however, the income be intestate estate the grandson will receive the

income for the beneficial use of his wife, his children and himself. The fact that the settlement of this estate has been delayed for an unaccountably long period and the grandson deprived of the beneficial enjoyment of the other one half for upward of twenty years does not affect the merit of the argument drawn from the consideration of relationship, family welfare and affection.

The facts in the case before us bear a close resemblance to those in *Shepard v. Union & New Haven Trust Co.,* 106 Conn. 627, 639, 640, 138 Atl. 809. In each the will does not dispose of the income from the residue to either the heir at law or to his children, nor provide for the accumulation of the income. "There is no direction in the will," we say, "providing for the accumulation of the income; nor is there any express gift of the accumulated income. There is nothing in the will from which we are required to draw the intention to accumulate. . . . We have a situation where the testator has not provided for the disposition of the income in large part. We cannot hold that it belongs to the grandchildren who ultimately enjoy the principal of the estate and take a vested interest in it from the decease of the testator, for the testator has not so provided. . . . If his purpose also was not to accumulate the income in the residue for their benefit, there is only one conclusion open, and that is that the testator omitted provision for the disposition of the income through forgetfulness and therefore the income as it accumulated became intestate estate, and so far as not required to meet the payments under the will and the expenses of the administration of the trust, it should ultimately be paid to the daughter of the testator, Mrs. Shepard, her heirs, executors, administrators and assigns."

Similarly applicable to the situation under the will

of Judge Phelps are these words. We cannot so construe this will as to hold that both Harrison F. Phelps and his children are by the will deprived of a right of enjoyment of this income and that it must accumulate for so great a period as to make questionable the validity of such a restraint upon alienation. Under these circumstances the holding that this income is intestate estate is the only permissible legal conclusion which can be reached under this will which will accord with our law and not do serious injustice to the immediate blood relatives of the testator. A sufficient amount of the estate upon the death of Harrison F. Phelps should be set aside to amply provide for the payment of the annuity to the widow of Harrison F. Phelps upon the same terms and conditions specified as to the annuities heretofore provided for.

We answer the questions upon which our advice is asked as follows:

As to 2: (a) the words take effect mean take effect or vest in point of right; (b) answered in accordance with the opinion; (c) yes, as to the children of Mrs. Soule, the whole existing surplus income, and annually hereafter, the surplus income remaining after the payment of annuities and the expenses of managing the estate; no, as to the children of Harrison F. Phelps. (d) Yes, to one half, subject to the proportion set aside for the annuities. (e) The income from the other half of the residue the principal of which belongs to the children of Harrison F. Phelps is intestate estate. (f) At the death of the testator. (g) On the death of Harrison F. Phelps.

No costs will be taxed in this court.

In this opinion the other judges concurred.