FRANK M. TRAVIS, ADMINISTRATOR, D. B. N., C. T. A.,
(ESTATE OF CHARLES ALLDIS) *vs.* WOLCOTTVILLE
SCHOOL SOCIETY ET ALS.

First Judicial District, Hartford, May Term, 1931.
MALTBIE, C. J., HAINES, HINMAN, BANKS AND AVERY, JS.

Argued May 5th—decided July 29th, 1931.

*Charles P. Roraback,* for the plaintiff.

*Thomas F. Wall,* for the defendant Catherine D. Alldis.

*Lucius F. Robinson, Jr.,* for the defendants Elizabeth Hammond Garrett and Samuel M. Hammond, administrator (Estate of Kate Dayton Hammond).

*John T. Hubbard* and *David Cramer,* for the defendant The Brooks Bank and Trust Company, administrator (Estate of Mary Alldis Javery).

*C. Ward Eicher,* of Pennsylvania, with whom, on the brief, was *David Cramer,* for the defendant Barclay-Westmoreland Trust Company, administrator (Estate of Catherine Alldis Carothers).

*Samuel A. Herman,* for the defendant Frank M. Travis, executor (under the will of Mary L. Alldis).

HAINES, J. This proceeding involves the construction and effect of certain paragraphs of the will of James Alldis late of Torrington in this State, who died March 13th, 1910, leaving a considerable estate consisting of both real and personal property. The will was executed September 6th, 1907, the first paragraph providing for the payment of debts and funeral expenses and the expense of the settlement of the estate; the second bequeathing to the Wolcotville School Society—a cemetery corporation in Torrington—$500 to be held in trust for the preservation and care of a burial lot; a third paragaph provided that if the testator had not, during his lifetime, erected a monument on his burial lot, the executor should do so at a cost of not more than $2500. The eighth paragraph was amended by a codicil October 26th, 1907, and a different house and lot substituted for that mentioned in the paragraph as first written. Beginning with the fourth paragraph, the will as thus amended, is printed in the footnote.

---

Fourth. I give, devise and bequeath to my beloved wife Mary L. Alldis the residence in which we now reside on Prospect Street, in said Town of Torrington, in the Borough of Torrington together with all the household furniture, wearing apparel, family stores and books, pictures, watch, chain and jewelry and all other personal effects of that nature contained in said house; also all horses, carriages, wagons, and the contents of the barn located on said premises, to have and to hold the same absolutely to her and her heirs and assigns forever.

Fifth. All the rest, residue and remainder of my estate both real and personal of whatsoever the same may consist or wheresoever it may be situated I give, devise and bequeath to my brother Charles Alldis of said Torrington, to be held in trust however for the following uses and purposes, viz: To pay to my said wife all of the income received from said estate for and during the period of her natural life, and should the income received from said remainder of my estate be insufficient for her comfort and support, then a portion of the principal of said estate may be used for that purpose.

Sixth. At the decease of my said wife, I give and bequeath to my adopted son J. Frank Alldis Two Hundred shares of the Pre-

The will was accepted, approved and recorded by the Court of Probate for the district of Torrington

ferred Capital Stock of the Torrington Company of the par value of Twenty-five (25) Dollars, each, to have and to hold the same to him and his heirs and assigns forever, and in the event of the decease of my said son before coming into possession of said capital stock, then the same shall go to his widow Catherine Alldis to her and her heirs and assigns forever, and in the event of her decease before coming into possession of said capital stock, then the same shall go to the children of said J. Frank Alldis share and share alike, to them and their heirs and assigns forever.

Seventh. At the decease of my said wife I give and bequeath to my said brother Charles Alldis all of the remaining preferred capital stock of said Torrington Company held by me to wit: Eight Hundred (800) shares of the par value of twenty-five (25) Dollars each to be held in trust by him however for the following uses and purposes, viz: The income received from the same to be paid to my said son for and during the period of his natural life, and at his decease said capital stock shall be divided and distributed as follows, viz: Two Hundred (200) shares to go to his widow the said Catherine Alldis to her and her heirs and assigns forever. The remaining six hundred (600) shares to be divided equally between the children of said J. Frank Alldis to share and share alike to them and their heirs and assigns forever, and if my said brother should deem it advisable to convert said preferred stock or any portion of it into other trust funds before the final distribution of my said estate he shall have the power and authority so to do at any time as Trustee aforesaid, but the avails received for any such sale shall be re-invested and the same shall pass to the legatees as above mentioned in the proportions as aforesaid.

Eighth. At the decease of my said wife, I give, devise and bequeath to my brother Charles Alldis of said Town of Torrington, the dwelling house and lot recently purchased by me at the corner of Pearl and Barber Street, in said Town and Borough of Torrington; also the building lot owned by me on Butler Street in said Town and Borough; also the wood lot owned by me and known as the "Rosback Lot" situated in said Town of Torrington, near "Burrville" (so called); also the sum of Four Thousand (4000) Dollars or its equivalent, to have and to hold the same to him and his heirs and assigns forever.

Ninth. At the decease of my said wife, I give, devise and bequeath to my sister Martha Alldis of said Town of Torrington the house and lot, together with the house in the rear situated on "Pearl Street" in said Town and Borough of Torrington, also the sum of One Thousand (1000) Dollars, or its equivalent to her and her heirs and assigns forever.

March 23d, 1910, and Charles Alldis, a brother of the testator, duly qualified as executor of the will, and

Tenth. At the decease of my said wife I give and bequeath to my niece Agnes Alldis of said Torrington the sum of Five Thousand (5000) Dollars or its equivalent to her and her heirs and assigns forever.

Eleventh. At the decease of my said wife I give and bequeath to my nephew Thomas Alldis of said Torrington the sum of Two Thousand (2000) Dollars, in cash or its equivalent, and in event of his decease without issue before coming into possession of the same, it shall go to said Agnes Alldis to her and her heirs and assigns forever.

Twelfth. At the decease of my said wife I give and bequeath to my brother Frederick G. Alldis of said Torrington, the sum of Five Thousand (5000) Dollars, in cash or its equivalent, and in the event of his decease before coming into possession of said Five Thousand (5000) Dollars, then Fifty per cent or one-half of his said legacy shall revert to the residuum of my estate, and the other fifty per cent or one-half shall be divided equally between Kate Dayton Hammond of New Haven, Conn., and James M. Dayton of Torrington, Conn. share and share alike to them and their heirs and assigns forever.

Thirteenth. At the decease of my said wife I give and bequeath to my niece Ella Rorabacher of said Torrington, the sum of Five Thousand (5000) Dollars in cash or its equivalent to her and her heirs and assigns forever.

Fourteenth. At the decease of my said wife I give and bequeath to my sister Mary Alldis the sum of Two Thousand (2000) Dollars or its equivalent to her and her heirs and assigns forever.

Fifteenth. At the decease of my said wife, I give and bequeath to my niece Alice Rorabacher Latimer the sum of One Thousand (1000) Dollars, to her and her heirs and assigns forever.

Sixteenth. At the decease of my said wife, I give and bequeath to my nephew Charles Rorabacher of said Torrington the sum of One Thousand (1000) Dollars to him and his heirs and assigns forever.

Seventeenth. At the decease of my said wife I give and bequeath to the sister of my said wife Elvira Mansfield if living the sum of Five Thousand (5000) Dollars or its equivalent.

Eighteenth. At the decease of my said wife, I give and bequeath to the brother of my said wife William Fenn if living the sum of Five Thousand (5000) Dollars, or its equivalent.

Nineteenth. At the decease of my said wife I give and bequeath to said Kate Dayton Hammond the note which I hold against her husband for the sum of One Thousand (1000) Dollars also One

died August 16th, 1914. On November 18th, 1914, this plaintiff, Frank M. Travis, was appointed by the Court of Probate, trustee under the terms of the will, and on November 9th, 1917, was also appointed administrator *d. b. n., c. t. a.* of the estate, and he duly qualified and is now acting as such. His final account as trustee, has been accepted and approved by the Court of Probate, and there remains for distribution about $200,000, less the expense of this action and other proper charges.

The testator left him surviving a widow, Mary L. Alldis, and an adopted son, J. Frank Alldis. The former died July 19th, 1929, and the plaintiff Frank M. Travis, qualified as executor of her estate. The son survived the testator but died before the testator's widow, himself leaving a widow, Catherine D. Alldis, and two children, Catherine Carothers and Mary Javery. Catherine survived the testator's widow and died about August 26th, 1929, and the Barclay-Westmoreland Trust Company qualified as administrator of her estate in the State of Pennsylvania; Mary also survived the testator's widow and died January 14th,

---

Thousand (1000) Dollars in cash or its equivalent, to her and her heirs and assigns forever.

Twentieth. At the decease of my said wife I give and bequeath to the said James M. Dayton the note which I hold against him for Five Hundred (500) Dollars; and also the further sum of Fifteen Hundred (1500) Dollars, in cash or its equivalent to him and his heirs and assigns forever.

Twenty-first. If in the distribution of my said estate it should not be sufficient to pay the above legacies in full, then it is my will that the amounts left to said Kate Dayton Hammond and James M. Dayton shall not be diminished and that the other legacies shall be reduced pro rata, and in the event of my estate when distributed being able to pay all of said legacies in full and there should be anything left, then I direct that all that remains of my said estate shall be distributed to all of the above named legatees pro rata in proportion to their respective bequests, to them and their heirs and assigns forever.

1930, and the Brooks Bank and Trust Company of Torrington qualified as the administrator of her estate.

Charles Alldis, the brother mentioned in paragraphs five and eight, survived the testator but predeceased the testator's widow, and died testate August 16th, 1914. He left him surviving no child, but a widow, Alice F. Alldis, and the plaintiff herein has qualified as executor under his will.

Martha Alldis, a sister of the testator, mentioned in paragraph nine, survived both the testator and his widow and died September 30th, 1930, and Charles Rorabacher qualified as the administrator of that estate.

Agnes Alldis, now Agnes Alldis Latimer, a niece of the testator, mentioned in paragraph ten is still living.

Thomas Alldis, a nephew of the testator, mentioned in paragraph eleven, survived the testator but predeceased the testator's widow, and was never married.

Frederick C. Alldis, a brother of the testator, also survived the testator but predeceased the testator's widow.

Kate Dayton Hammond, mentioned in paragraph twelve, also survived the testator but predeceased the testator's widow, her death occurring September 22d, 1911. She left her surviving, a husband, Samuel Hammond, and one child, Elizabeth Hammond, now Elizabeth Hammond Garrett. Samuel Hammond qualified as administrator of the estate of his wife.

James M. Dayton, mentioned in paragraph twenty, is still living.

Charles Rorabacher and Ella Rorabacher, mentioned in paragraphs sixteen and thirteen, are nephew and niece, respectively, of the testator and both are still living.

Mary Alldis, mentioned in paragraph fourteen, later Mary Alldis Rorabacher, was a sister of the testator

and survived him, but died before the testator's widow, that is, on November 3d, 1920. She left no estate, but her heirs at law and next of kin were Charles Rorabacher and Ella Rorabacher above mentioned, and the children of a deceased daughter Alice Rorabacher Latimer, who died August 12th, 1916, these children being Roland Latimer, Doris Latimer Wheeler, Edith Latimer and Richard Latimer.

Elvira Mansfield, mentioned in paragraph seventeen, was a sister-in-law of the testator and died December 1st, 1909, before the testator's widow.

William Fenn, mentioned in paragraph eighteen, was a brother-in-law of the testator, who survived him but died before the testator's widow.

At the time of executing the will, the testator owned one thousand shares of the preferred stock of The Torrington Company, but at his death he owned thirteen hundred and fifty shares, of which three hundred and fifty were issued to him after the will was executed. All this stock has now been redeemed by the company and the cash received therefor is in the hands of the plaintiff. We observe that certain of the claimants in their briefs, refer to the redemption price of this stock as $27.50 per share, and others, including the plaintiff, refer to it as $31.25 per share, while neither the complaint nor the reservation name the figure. However, the correct price is not necessary to this discussion, since we shall refer to this cash only as representative of the shares about which questions have arisen.

We are asked the following questions:

"1st. Whether under paragraphs 'Sixth' and 'Seventh' of the will of said deceased J. Frank Alldis, his widow or children have any interest in more than one thousand (1000) shares of the preferred stock of the Torrington Company.

"2nd. Whether the devise of real estate in paragraph 'Eighth' of the will of said deceased as amended by the codicil to said will vested the title to such real estate in said Charles Alldis, and whether or not the bequest of Four Thousand (4000) Dollars in said paragraph 'Eighth' should be paid to the Executor of this estate.

"3rd. Whether the bequest of Agnes Alldis Latimer in paragraph 'Tenth' of the will of said deceased should be paid to her.

"4th. Whether the bequest to Thomas Alldis in paragraph 'Eleventh' should be paid to Agnes Alldis Latimer.

"5th. Whether the bequest in paragraph 'Twelfth' of said will to Frederick G. Alldis should lapse one-half to the residuum of the estate and whether one-half the balance should be paid to the Executor or Administrator of the Estate of Kate Dayton Hammond and the other one-half to James M. Dayton.

"6th. Whether the bequest to Mary Alldis Rorabacher in paragraph 'Fourteenth' should be paid the Executor or Administrator of her estate.

"7th. Whether the bequest in paragraph 'Fifteenth' of said will should be paid to the Executor or Administrator of the Estate of Alice Rorabacher Latimer.

"8th. Whether the Estate of Elvira Mansfield or William Fenn have any interest in and to the fund to be distributed by virtue of paragraphs 'Seventeenth' and 'Eighteenth' of said will.

"9th. Whether the bequest in paragraph 'Nineteenth' to Kate Dayton Hammond should be paid to the Administrator or Executor of her estate.

"10th. Whether in the pro rata division of said Estate the legatees should be paid a proportionate share in proportion to the total amount of property

received by them, or whether it should be pro rated in proportion to the bequests of personal property.

"11th. Whether under said paragraph 'Twenty-first' the Estate of Mary Alldis is entitled to any pro rata share of the surplus.

"12th. Whether under said paragraph the Wolcott-ville School Society is entitled to any pro rata share of said surplus."

As appears from the foregoing, one of the most important of these questions relates to the proper division of the thirteen hundred and fifty shares of The Torrington Company stock. All this stock and all other property of the testator, after the satisfaction of the first four paragraphs of the will, was held under paragraph five in trust for the benefit of the widow of the testator, Mary L. Alldis, until her death July 19th, 1929, when the trust terminated and a final distribution was then required under the succeeding paragraphs of the will, the opening words of each of these paragraphs being, "At the decease of my said wife."

The sixth and seventh paragraphs dispose of all the stock of The Torrington Company which the testator then owned, viz: one thousand shares. In the sixth paragraph he first gives "two hundred" of these shares to the son J. Frank Alldis, "to have and to hold the same to him and his heirs and assigns forever, and in the event of the decease of my said son before coming into possession of said capital stock, then the same shall go to his widow Catherine Alldis, to her and her heirs and assigns forever, and in the event of her decease before coming into possession of said capital stock, then the same shall go to the children of said J. Frank Alldis share and share alike, to them and their heirs and assigns forever." By the seventh he gives "all of the remaining" stock "held by me, to wit, eight hundred shares," to his brother Charles Alldis in

trust for the son, who is to receive the income for life. At the death of the son, it is provided that this eight hundred shares "shall be divided and distributed as follows, viz: two hundred shares to go to his widow the said Catherine Alldis," absolutely. "The remaining six hundred shares to be divided equally between the children of said J. Frank Alldis."

Some of the parties in interest contend that the foregoing paragraphs were intended by the testator, to dispose of the entire thirteen hundred and fifty shares which he held at his death, and that, deducting the two specific gifts of two hundred shares each, the children and representatives of children of J. Frank Alldis are entitled to nine hundred and fifty shares. Other parties insist that these paragraphs dispose only of the one thousand shares specifically mentioned.

The former point to the words "all," "held by me" and "remaining" as indicating an intention to dispose of all the stock held at the testator's death, and invoke the general rule of testamentary construction that a will speaks from the death of the testator. In the absence of any indicated intent to the contrary this will be presumed. However there are many exceptions to the general rule, and an intent to the contrary sufficiently manifested in the language of the will, makes the will speak as of some other time. "Wherever a testator refers to an actual existing state of things, his language should be held as referring to the date of the will, and not to his death, as this is then a prospective event." Gold v. Judson, 21 Conn. 616, 622; Canfield v. Bostwick, 21 Conn. 550, 553; Dickerson's Appeal, 55 Conn. 223, 10 Atl. 194; Fidelity Title & Trust Co. v. Young, 101 Conn. 359, 125 Atl. 871; Griffith v. Adams, 106 Conn. 19, 137 Atl. 20.

We cannot concur in the view that the testator intended to give these legatees more than the exact

amounts of stock referred to specifically by him. At the time these paragraphs were written, the existing fact was that all the stock held by him was one thousand shares. It was obviously, as we believe, this specific block of stock and this only, which he had in mind in making this particular division among these legatees. He gave one fifth, or two hundred shares, to the son, another fifth subject to his use to the son's widow, and three fifths to their children. These proportionate amounts were named with care, having the existing situation in mind. These proportions would be destroyed if nine hundred and fifty rather than six hundred shares were to go to the children. It is to be noted that in paragraph seven, he gives his brother the power to turn part or all this stock into cash at his discretion, but again refers to the proportionate interests he has just created by providing that in the event the stock be converted into cash, the avails "shall pass to the legatees as above mentioned in the proportions as aforesaid."

The language used in the decision of *Wheeler* v. *Brewster*, 68 Conn. 177, 181, 36 Atl. 22, has a peculiarly apt application in this connection: "The condition of mind of the testator at the time of the execution appears to us to be obvious. He fully understood the items which it included, and the disposition he wished to make of each of them. The contingency that such items might at the time of his death be varied, by sale or purchase, did not enter his contemplation." To paraphrase the conclusion in that case, we may say of this, that the testator's language is the equivalent of saying, "I have one thousand shares of the preferred stock of The Torrington Company and I dispose of it as follows." The after-acquired three hundred and fifty shares was, at the time the will was drawn, presumably represented by other

property of the testator, and this was disposed of with the balance of the property in the succeeding paragraphs. If all his property had afterward been invested in this stock, it is manifest that none of these other provisions of the will could have been satisfied, if the language in question was intended to carry all the stock he owned at his death.

We find in the language used, read in the light of the surrounding circumstances, a clear intent to dispose of one thousand shares only, and that intent is controlling. *Catto* v. *Plant,* 106 Conn. 236, 137 Atl. 764; *Fidelity Title & Trust Co.* v. *Young,* 101 Conn. 359, 125 Atl. 871; *Sadler* v. *Sadler,* 107 Conn. 409, 140 Atl. 639; *Hartford-Connecticut Trust Co.* v. *Beach,* 100 Conn. 351, 359, 123 Atl. 921.

After he had made specific gifts by the first four paragraphs the testator in the fifth paragraph put all the balance of his estate into a trust fund, the income to be paid to his wife, and if necessary a part of the principal to be used for her benefit, during her life. The succeeding fifteen paragraphs all begin with the words "At the decease of my said wife." The son named in the sixth paragraph, the brother named in the eighth, the nephew in the eleventh, and the brother in the twelfth, and those beneficiaries named in the fourteenth, fifteenth, eighteenth and nineteenth paragraphs all survived the testator but died before the termination of the life estate by the death of the testator's widow. The parties to this reservation are not in agreement as to the effect of these opening words upon the vesting and enjoyment of these gifts. On the one hand it is claimed that they only vested at the date of the death of the life tenant, in which case, the legacies of those beneficiaries who did not survive the life tenant, would under the general rule and in the absence of other provisions, lapse and fall into the

residuum of the estate, while on the other hand it is contended that the will as drawn creates a true life estate and remainder, and that the latter became vested and indefeasible on the death of the testator if the beneficiary was then living.

The question is not an open one in this State. In *Wheeler* v. *Brewster,* 68 Conn. 177, 36 Atl. 32, one of the clauses of the will of George S. Brewster read as follows: "From and after the decease of my precious dearly beloved wife Mary Lockwood, I give and bequeath to my dear brother William E., the residue or remainder of my estate, being a lot of land adjoining his own." Mary Lockwood died in 1894 and William E. died in 1893 leaving a widow as his sole devisee and legatee. It was held that the gift to William E. vested at the testator's death before his own, and that his own death before that of the life tenant, did not divest his title, the land accordingly passing to his widow. *Mahoney* v. *Mahoney,* 98 Conn. 525, 120 Atl. 342; *Middletown Trust Co.* v. *Gaffey,* 96 Conn. 61, 112 Atl. 689; *White* v. *Smith,* 87 Conn. 663, 89 Atl. 272; *Chapin* v. *Cooke,* 73 Conn. 72, 82, 46 Atl. 282.

As to the above mentioned fifteen paragraphs, therefore, we hold that, with the exception of the sixth, eleventh, twelfth, seventeenth and eighteenth, the beneficiaries took indefeasible vested remainder interests upon the death of the testator whom they survived. *Trowbridge* v. *Townsend,* 112 Conn. 104, 111, 151 Atl. 345; *Belcher* v. *Phelps,* 109 Conn. 7, 144 Atl. 659; *Austin* v. *Bristol,* 40 Conn. 120. In the sixth, eleventh and twelfth paragraphs the beneficiaries never came into possession and the shares passed by substitution as in those paragraphs provided. The eighteenth paragraph is different, in that the gift of $5000 is given "At the decease of my said wife . . . to . . . William Fenn if living." This conditioned the

gift upon the survival of the beneficiary after the death of the testator's wife. This gift lapsed by the death of the beneficiary before that time. The same result followed in the seventeenth paragraph of a gift of $5000 to Elvira Mansfield, whose death occurred in fact before that of the testator himself.

The conclusion that indefeasible vested remainders were created by the eighth, fourteenth, fifteenth and nineteenth paragraphs is further supported by an expression used in paragraphs sixth, eleventh and twelfth where it is provided that if the beneficiary dies "before coming into possession" of the gift, it is to go to other named beneficiaries. This indicates that the testator was referring to the actual possession or enjoyment which was to occur at the decease of the life tenant, and that this date was not intended by the testator to be the date of the vesting of title but the date of possession and enjoyment only.

Arguing to a contrary conclusion as to the time of vesting, certain claimants urge a controlling analogy between this case and that of *Belcher* v. *Phelps,* 109 Conn. 7, 144 Atl. 659, where they quote this court as follows: "We have held, repeatedly, that if a future event or time is annexed to the substance of the legacy or gift, the vesting is postponed to the time named, but if the future time or event is annexed to the time of payment only the legacy or gift vests immediately. . . . but where it is not given until a future time it does not vest until that time. . . . Seldom will be found a plainer example of the annexation of the future event to the substance of the gift than in the provision: 'On the decease of the said Harrison F. Phelps I devise and bequeath to his children . . . the other one-half of the residue of my estate.' The gift takes effect upon his decease, that is, upon the

future event upon whose coming the existence of the gift is made to depend."

An examination of the record in that case discloses that the testator in the first six paragraphs of his will gave certain specific gifts to named beneficiaries, and in the seventh created a trust fund for his son Harrison F. Phelps, of $5000, while in the eighth paragraph he left the life use of the balance of his estate to his widow. In the succeeding paragraphs he disposes of that fund by giving one half of it outright to the children of his niece Elizabeth P. Soule, and "On the decease of the said Harrison F. Phelps," he gives the other half in equal shares to the children of Harrison F. Phelps who survived their father, but annexed thereto were several conditions, one being that if he left no children or lineal descendants of children, then that one half of the residue was to go to the children of his nephew George W. Phelps, and if any of that class of children should die "before the legacy to them shall take effect" then their lineal descendants if any should take the parents' share. The quotation from the opinion in that case in the brief of counsel in this case is not complete. It should read "On the decease of the said Harrison F. Phelps I devise and bequeath to his children, in equal shares, IF HE SHALL LEAVE ANY SURVIVING HIM, the other one-half of the residue," etc.

It will be seen from the foregoing that the gift to the children of Harrison F. Phelps and to the children of George W. Phelps was strictly contingent, since it could not be known until the death of Harrison, who was to take. The gift therefore necessarily vested and took effect only upon the death of Harrison. This case is not authority for the position taken by these claimants.

Applying these conclusions to the various paragraphs of the will which are in question: Under the

sixth paragraph the son of J. Frank Alldis died before the life tenant and so never came into possession of the two hundred shares of stock provided for him and it passed by substitution to Catherine D. Alldis his widow.

Under paragraph seven, Catherine D. Alldis takes two hundred shares of stock or its equivalent, and the respective estates of her children Catherine Carothers and Mary Javery, each take three hundred shares or its equivalent. Under paragraph eighth the real estate referred to therein and $4000 in cash or its equivalent, becomes a part of the estate of Charles Alldis. Under the tenth paragraph Agnes Alldis, now Agnes Alldis Latimer, is entitled to $5000 or its equivalent. Under the eleventh paragraph $2000 or its equivalent goes by substitution to Agnes Alldis Latimer, Thomas Alldis having died without issue, before the life tenant's death. Under paragraph twelfth, Frederick G. Alldis having died before the life tenant, he never came into possession, with the result that by substitution $2500 or its equivalent goes to the residuum of the testator's estate, and a like sum to the estate of Kate Dayton Hammond deceased. Under the fourteenth paragraph, Mary Alldis having died in 1920, her estate is entitled to $2000 or its equivalent. Under the fifteenth paragraph, Alice Rorabacher Latimer having died in 1916, her estate is entitled to $1000 or its equivalent. Under paragraph seventeenth the legacy to Elvira Mansfield, of $5000, has lapsed, she having died in 1909, and this sum or its equivalent goes into the residuum. Under paragraph eighteenth the gift of $5000 or its equivalent to William Fenn, who died before the testator, also lapsed, and that sum goes into the residuum. Under paragraph nineteenth, the note for $1000 and $1000 in cash or its equivalent, goes to the estate of Kate Dayton Hammond.

The twenty-first paragraph provides for a scaling down of certain legacies if the amount in the estate is insufficient to pay all of them in full, but if there be a sufficient amount (which has proved to be the fact) then the residuum "shall be distributed to all of the above named legatees pro rata in proportion to their respective bequests." We believe it was clearly the intent of the testator to make this division on the basis of the gifts of personal estate only, since the words used, "bequests," "legacies" and "legatees" are apt for the expression of that intent, and since the real estate was not valued by the testator and no means were provided for doing so for the purpose of such division. This division should be made on the basis of the total amount of personal property received by each of these beneficiaries, including the notes given in paragraphs nineteen and twenty of the will, but excluding therefrom the Wolcottville School Society and the estate of the testator's widow, who are obviously not intended to share; the personal property to be valued as of the date of the death of the widow of the testator.

We answer the questions propounded to us as follows: To the first, eighth, eleventh and twelfth, No. To the second, third, fourth, fifth, sixth, seventh and ninth, Yes. To the tenth—in proportion to the bequests of personal property.

No costs will be taxed in this court to either party.

In this opinion the other judges concurred.