## JANUARY TERM 1865, AT BOSTON.

PRESENT:

Hon. GEORGE T. BIGELOW, Chief Justice.
Hon. CHARLES A. DEWEY,
Hon. THERON METCALF,
Hon. EBENEZER R. HOAR, } Justices.
Hon. REUBEN A. CHAPMAN,
Hon. HORACE GRAY, Jr.,

## ESSEX COUNTY.

### [CONTINUED FROM VOLUME IX.]

### Charles Odell *vs.* James A. Odell & others.

A bequest of an annual sum, out of the income from real estate, for fifty years to trustees, to be invested by them and accumulated during that time, and then applied to establish a charity, is a valid bequest; even if the accumulation cannot be allowed for so long a period.

What is the legal limit of accumulation for a charity, *quære.*

A will contained the following bequest : " I give to the trustees of the Salem Savings Bank in trust one hundred dollars annually for fifty years, to be paid to them by my executors, to be safely invested by said trustees, the interest to be added to the principal by them semi-annually. At the expiration of fifty years the sum which shall have accumulated shall be appropriated by a society of ladies from all the Protestant religious societies in Salem to provide and sustain a home for respectable, destitute, aged, native-born Ameri can men and women. The above a..nual payment shall he made from the income of my

Odell *v.* Odell & others.

real estate, which real estate shall be held in trust by my executors, until the last payment shall have been made to the trustees of the Salem Savings Bank; then my real estate shall be divided equally among the grandchildren of my late brother James." *Held,* that this was a valid bequest, even if the direction for accumulation was invalid.

BILL IN EQUITY, filed by Charles Odell, one of the executors named in the will of Thomas F. Odell, and who had been appointed executor and trustee under it, to obtain the instructions of the court as to the validity and effect of the following article in the will:

"6th. I give to the Trustees of the Salem Savings Bank in trust one hundred dollars annually for fifty years, to be paid to them by my executors, to be safely invested by said trustees, the interest to be added to the principal by them semi-annually. At the expiration of fifty years the sum which shall have accumulated shall be appropriated by a society of ladies from all the Protestant religious societies in Salem to provide and sustain a home for respectable destitute aged native-born American men and women. The above annual payment shall be made from the income of my real estate, which real estate shall be held in trust by my executors until the last payment shall have been made to the trustees of the Salem Savings Bank; then my real estate shall be divided equally among the grandchildren of my late brother James."

The testator further directed his executors to pay to the widow of his brother James, from the yearly income of his real estate, two hundred dollars annually during her natural life; and the residue of said income, "after making the foregoing payments and paying all necessary expenses," among the children of his said brother, of whom the plaintiff was one, and who were also his heirs at law. The will contained several legacies which do not affect this case, and no residuary devise or bequest. The real estate of which the testator died seised had been appraised at the value of $11,200.

Answers were filed by the Trustees of the Salem Savings Bank, a corporation duly established by law of the Commonwealth, who insisted that the bequest to them is valid, but declined the trust thereby created, and prayed that a new trustee

might be appointed in their stead; and by all the children of James Odell except the plaintiff, who alleged that the sixth article in the will was inoperative and void, and that said children were entitled to all the income of the real estate, except the annuity to the widow of James Odell, during her lifetime, and to the real estate itself upon her death.

*J. W. Perry,* (*C. Kimball* with him,) for the heirs at law. Text books and judges have incidently remarked, as in 7 Allen, 247, that charities are not obnoxious to the rule against perpetuities; but by this it is merely intended that a present gift to a charity, to be perpetual, is not void for that reason. It was never intended by this expression that an executory devise to a charity which is not to vest within the required time is good because it is to a charity. If this were so, the rule as to executory devises would be as follows: " Property given by way of executory devise must vest within a life or lives in being, and twenty-one years and nine months, unless the gift is to a charity, in which case there is no limit." This exception is nowhere to be found. See *Company of Pewterers* v. *Christ's Hospital,* 1 Vern. 161; *Attorney General* v. *Gill,* 2 P. W. 369; *Hillyard* v. *Miller,* 10 Penn. State R. 326.

Trusts for accumulations are governed by the same rules and reasons as executory devises, in the absence of statute provisions to the contrary. *Thellusson* v. *Woodford,* 4 Ves. 227; *S. C.* 11 Ves. 112. *Brattle Square Church* v. *Grant,* 3 Gray, 142. 1 Jarman on Wills, (4th Amer. ed.) 220–222, 265. And if a testator takes an absolute term longer than twenty-one years, without embracing a life, for an accumulation, the devise is void, because the life might not have lasted for an hour. This rule applies to accumulations for charities as well as for individuals, because the rule is analogous to the rule in relation to executory devises, and the public inconvenience is as serious from accumulations for charity as for any secular purpose. If this is not the rule, large sums may be given to accumulate for indefinite periods, for future charities, and finally absorb and control all the property in the Commonwealth.

If this bequest for accumulation is void for the fifty years, it

is void *in toto,* and the court cannot establish the gift to accumulate for a less period. Lewis on Perp. 592. 2 Roper on Leg 1557. This was modified in England by *St.* 39 & 40 Geo. III. *c.* 98; but we have no similar statute.

The question then arises, whether the gift itself is void, as well as the direction to accumulate for fifty years. It is possible that a present gift to a charity might be sustained, though the directions for its management were impossible or illegal. *Williams* v. *Williams,* 4 Selden, 538. In the will now under consideration, no principal sum is given at all, but a portion of the income of the real estate, year by year. The whole fund is accumulation; and the direction to accumulate is so interwoven with the substance of the bequest that it cannot be stricken out without destroying the bequest. *Wilson* v. *Lynt,* 16 How. Pract. R. (N. Y.) 348. The ownership of the fund is suspended for fifty years; and it amounts simply to an executory devise. This being void, the Savings Bank, as the first takers, would take the whole fund; but they are mere naked trustees, and therefore the trust results to the heirs at law and is void. *Southampton* v. *Hertford,* 2 Ves. & B. 64. *Boughton* v. *James,* 1 Colly. Ch. 45.

The court can have no control over this trust for fifty years, as there are no possible objects of the charity interested in it during that time. And savings banks are not allowed by law to take such trusts.

*G. Wheatland,* for Salem Savings Bank.

GRAY, J. "Relief of aged, impotent and poor people" is the first charitable use mentioned in the *St.* of 43 Eliz. *c.* 4; and it is not denied that the declared purpose of this testator "to provide and sustain a home for respectable, destitute, aged, native-born American men and women" was strictly charitable, in the eye of the law. But it has been strongly and ably argued that the accumulation directed by the will would prevent the money bequeathed for this object from being used for any purpose whatever until a period more remote than the policy of the law will allow, and that the bequest is therefore void.

The law of perpetuities and accumulations, as applied to individuals, is well settled. By the common law of England

Odell *v.* Odell & others.

and of this commonwealth, no estate, legal or equitable, can be created by deed or will, to vest upon the happening of a contingency which may by possibility not take place within a life or lives in being (treating a child in its mother's womb as in being, because in law capable of inheriting) and twenty-one years afterwards. This limit is said to have been adopted by analogy to the ordinary limitations in strict settlement for the life of a tenant in tail and the possible minority of his heir; but the life or lives need not be those of any person interested in the estate, provided only, in the words of Lord Hale, "the candles are lighted all at once;" nor need the term of twenty-one years refer to the infancy of any person whatever. The reason of the rule is that to allow a contingent estate to vest at a more remote period would tend to create a perpetuity by making the estate inalienable; for the title of the first taker would not be perfect, and until the happening of the contingency it could not be ascertained who was entitled, and so the estate could not be alienated, even, as has been said, if all mankind should join in the conveyance. *Brattle Square Church* v. *Grant*, 3 Gray, 142. *Smith* v. *Harrington*, 4 Allen, 566. *Fosdick* v. *Fosdick*, 6 Allen, 41. *Blake* v. *Dexter*, 12 Cush. 570. 2 Spence on Eq. *c.* 2. *Alford's case*, O. Bridgm. 587.

At common law, the power of controlling the rents and profits was coextensive with the power to dispose of the estate which produced them, the limit of the accumulation of annual income was the same as the limit of the creation of future estates, and the enjoyment of the profits could not be suspended for a longer period than the full power of alienating the estate itself. *Thellusson* v. *Woodford*, 4 Ves. 227; *S. C.* 11 Ves. 112. *Hooper* v. *Hooper*, 9 Cush. 122. *Thorndike* v. *Loring*, 15 Gray, . Accumulation even to this extent has been found so inconvenient as to have been still further restrained by statute in England and in some of the United States. The *St.* of 39 & 40 Geo. III. *c.* 98, occasioned by the case of *Thellusson* v. *Woodford*, just cited, and therefore commonly called the Thellusson Act, established narrower limits beyond which no person should by any deed, will, "or otherwise howsoever, settle or dispose of any real or

personal property " so that the income thereof should be wholly or partly accumulated, except in certain cases, among which charitable trusts were not specified. And Vice Chancellor Shadwell held that a will made since that act, directing an indefinite accumulation for a charitable purpose, could not be carried out in the mode prescribed. *Martin* v. *Margham,* 14 Sim. 230. But as there is no statute upon the subject in Massachusetts, accumulations are here still governed by the rules of the common law.

The rule of public policy, which forbids estates to be indefinitely inalienable in the hands of individuals, does not apply to charities. These, being established for objects of public, general and lasting benefit, are allowed by the law to be as permanent as any human institution can be, and courts will readily infer an intention in the donor that they should be perpetual. 1 Spence on Eq. 588. *Mayor, &c. of Bristol* v. *Whitson,* Dwight's Charity Cases, 171. *Magdalen College* v. *Attorney General,* 6 H. L. Cas. 205. *Perin* v. *Carey,* 24 How. 465. *King* v. *Parker,* 9 Cush. 82. *Dexter* v. *Gardner,* 7 Allen, 246. If an alienation of the estate becomes essential to the beneficial administration of the charity, it may be authorized by a court of chancery. Tudor on Charitable Trusts, 298, and cases cited. *Shotwell* v. *Mott,* 2 Sandf. Ch. 55. *Wells* v. *Heath,* 10 Gray, 27.

Many charitable devises have been defeated in England under the *St.* of 9 Geo. II. *c.* 36, prohibiting alienations or dispositions of land to charitable uses, unless by deed made twelve months and enrolled in chancery six months before the donor's death. But that statute, like some earlier mortmain acts, was wholly English, dictated by considerations of local policy, and did not extend to Scotland, Ireland or the Colonies. Ib. § 6, *ad fin.* Tudor on Charitable Trusts, 94, 96, and cases cited. 4 Dane Ab. 5, 238, 239. 2 Kent Com. (6th ed.) 282, 283. *Perin* v *Carey,* 24 How. 500. The similar provision in the Prov. St. of 28 Geo. II. *c.* 9, passed in the Province of Massachusetts Bay at a time when the influence of England was strongest, was repealed immediately after the Revolution, and has not been reënacted in this commonwealth. *St.* 1785, *c.* 51. *Bartlet* v. *King* 12 Mass. 545. The reasons for maintaining and perpetuating

charities certainly do not diminish with the abolition of the right of primogeniture, the disuse of entails, and the more equal division and distribution of property.

If a devise in fee for the benefit of a charity is accompanied by an executory devise over to individuals upon the happening of a contingency which may possibly not occur within the time prescribed by the rule against perpetuities, the devise over is void, for the reason that until the contingency happens it cannot be ascertained in whom the title will be. *Wells* v. *Heath,* 10 Gray, 25, 26. And if a gift is made in the first instance to an individual, and then over, upon a contingency which may not happen within the prescribed limit, to a charity, the gift to the charity is void, not because the charity could not take at the remote period, but because it tends to create a perpetuity in the individual who is the first taker, by making the estate inalienable by him beyond the period allowed by law. *Company of Pewterers* v. *Christ's Hospital,* 1 Vern. 161. *Commissioners of Donations* v. *De Clifford,* 1 Drury & Warren, 254. Within the same class fall cases of gifts of an annuity to A., and his heirs, or of personal property to A. and the heirs of his body, and then over to a charity, in which the gifts over have been held void as too remote. *Attorney General* v. *Gill,* 2 P. W. 369. *Attorney General* v. *Hall,* W. Kel. 13. The decision in *Attorney General* v. *Gill* indeed can hardly be maintained upon the facts stated in the report, inasmuch as in that case A. died before the testator, so that the estate, according to modern decisions, would seem to have vested immediately in the charity. *Burbank* v. *Whitney,* 24 Pick. 146. 1 Jarman on Wills, (4th Amer. ed.) 256, 257.

But a gift may be made in trust for a charity not existing at the date of the gift, and the beginning of whose existence is uncertain, or which is to take effect upon a contingency which may possibly not happen within a life or lives in being and twenty-one years afterwards, provided there is no gift of the property meanwhile to or for the benefit of any individual or any private corporation. In the case of Downing College, a gift to trustees to buy ground, obtain a royal charter and

found the college, was established twenty years after the testa-tor's death by Lord Northington and Lord Camden, after taking the opinion of Lord Chief Justice Wilmot and Sir Thomas Sewell, M. R.; followed up by decrees of Lord Loughborough thirty years later, after five unsuccessful applica-tions to the crown for a charter; and a charter was not in fact obtained until more than fifty years after the death of the testa-tor, after which further directions in the cause were made by Lord Eldon. *Attorney General* v. *Downing*, Wilmot, 1; *S. C.* Dick. 414; Ambl. 550, 571. *Attorney General* v. *Bowyer*, 3 Ves. 714; *S. C.* 5 Ves. 300; 8 Ves. 256. So Lord Thurlow held that a legacy for the purpose of establishing a bishop in America was good, although none had yet been appointed. *Attorney General* v. *Bishop of Chester*, 1 Bro. C. C. 444. In *Inglis* v. *Sailors' Snug Harbor*, 3 Pet. 99, a devise and bequest in trust out of the rents and profits to build a sailors' hospital as soon as the trustees should judge that the proceeds of the estate would support fifty or more sailors, (first obtaining an act of incorporation, if necessary,) and to use the income of the property forever for supporting the hospital and maintaining sailors therein, was sustained by the supreme court of the United States; and although there was some difference of opinion among the judges upon other points, none of them ex-pressed any doubt of the validity of the disposition upon the ground of remoteness. And in *Sanderson* v. *White*, 18 Pick. 336, Chief Justice Shaw said, " When a gift is made with a view to found a hospital or college, not in being, and which requires a future act of incorporation, the gift is nevertheless valid, and the law will sustain it and carry it into effect."

Upon this principle it has been held in England that if a gift is made to one charity in the first instance, and then over to another charity upon the happening of a contingency which may not take place within the limit of the rule against perpetuities, the limitation over to the second charity is good, because no in-dividual is concerned, and no private use involved; the estate is no more perpetual in two successive charities than in one charity; and so the law against perpetuities and remoteness has

no application, and there is nothing to restrain the donor from affixing such limitations and contingencies, in point of time, to his charitable gift, as he pleases. *Society for Propagation of the Gospel* v. *Attorney General*, 3 Russ. 142. *Christ's Hospital* v. *Grainger*, 16 Sim. 100 ; *S. C.* 1 Macn. & Gord. 464 ; 1 Hall & Twells, 539. A similar decision has been made by the supreme court of the United States under the civil law as established in Louisiana. *McDonough* v. *Murdoch*, 15 How. 367.

We are thus brought to the question, how far the rule of law limiting the period of accumulation applies to charitable gifts. Any directions for accumulation for the benefit of individuals until the happening of a contingency which by possibility may not take place within the period prescribed by the rule against perpetuities are void. But there are many cases in which the law has been assumed to be different as applied to charities.

In 1788 Ralph Bradley, an eminent lawyer, made his will, by which he gave his personal property in trust to pay £500 a year for twenty years from the end of three years after his death, and then £1000 a year until the 5th of January 1860, or seventy years after his death, and then the whole income of the accumulated fund, to purchase such books, to be disposed of in Great Britain or the British dominions, as might have a tendency to promote the interests of virtue and religion and the happiness of mankind. Lord Thurlow held this too indefinite in its objects to be established as a charity. But neither he, nor Sir William Grant nor Lord Eldon, when expressing grave doubts of the correctness of that decision, ever doubted the lawfulness of the direction for accumulation, although the time of accumulation was mentioned in the argument before Sir William Grant, and Lord Eldon expressly referred to the fact that Mr. Bradley's intention was that the fund should be accumulated for many years. *Browne* v. *Yeall*, 7 Ves. 50 *n.* ; *S. C.* cited in 9 Ves. 403, 406, and 10 Ves. 27, 534, 539.

In one case indeed the house of lords, upon the advice of Lord Wynford, held that a gift of property to accumulate until it should amount to the sum of      pounds sterling, and then

to be employed in erecting and maintaining a hospital for the support, clothing and education of          boys, was void. *Ewen* v. *Bannerman*, 2 Dow & Clark, 74; *S. C. nom. Ewen* v. *Magistrates of Montrose*, 4 Wilson & Shaw, 346. But that case, according to the opinions of Lords Chelmsford and Wensleydale, is to be supported (if it can be supported at all) upon the ground that the blanks left the gift too incomplete and uncertain to be carried into execution. *Magistrates of Dundee* v. *Morris*, 3 Macqueen, 154, 155, 174. See also *Henshaw* v. *Atkinson*, 3 Madd. 310, 313; *Philpott* v. *St. George's Hospital*, 6 H. L. Cas. 359, 360, 369; *Inglis* v. *Sailors' Snug Harbor*, above cited; *District Attorney* v. *Cushing*, 2 Cush. 519.

Count Rumford in 1796 gave the sum of five thousand dollars to the American Academy of Arts and Sciences in trust to pay the interest biennially as a premium to the author of the discovery or improvement on heat or light, most beneficial to mankind, which should be published in America during the two years next preceding, and directed that, as often as there should be no such discovery or improvement deserving the premium in the opinion of the trustees, the amount should be added to the principal, and the subsequent premiums proportionally augmented, without restriction. No discoveries or improvements within the terms of the gift were made for more than forty years, the fund increased to fourfold the original amount, and the donor's residuary legatees claimed the whole fund, or at least the surplus accumulation. But Chief Justice Shaw held that the American Academy was entitled to the whole fund and its accumulations, and adopted a scheme for promoting the general intent of the donor. *American Academy* v. *Harvard College*, 12 Gray, 582.

John Hawes, who died in 1829, by his will devised real estate in trust to apply the income forever to the support of public schools and of a Congregational religious society in South Boston, and directed that when the income should have so increased and accumulated as in the opinion of the trustees to answer these purposes, the surplus should be appropriated to the establishment of a second Congregational society, the settlement and

support of a minister, and the erection and maintenance of a house of public worship for that society, and to the support and encouragement of such other seminaries of learning, and in such way as the trustees should think most for the honor of God and the good and happiness of the inhabitants of South Boston and their posterity. The probate of the will was opposed, among other grounds, because the will was void as creating perpetuities and indefinite and useless accumulations. But this court, in an opinion delivered by Mr. Justice Wilde, held that it could not, sitting as the supreme court of probate, examine that question. Twenty years later, upon a bill in equity by the First Congregational Society claiming more than the trustees had seen fit to allow to that society out of the accumulations in their hands, this court, speaking through the same judge, without doubting the validity of the devise, said that the surplus income amounted only to $650, " which must be allowed to accumulate for a long time, before it will be sufficient to support a minister in a second Congregational society, and to erect a house of public worship, and to fulfil the intentions of the testator as to the other uses and purposes provided for in the said clause of the will." *Hawes* v. *Humphrey,* 9 Pick. 350, 355, 362. *Hawes Place Congregational Society* v. *Trustees of Hawes Fund,* 5 Cush. 454.

Oliver Smith bequeathed money to trustees to be managed as an accumulating fund for the term of sixty years, and then to be paid over to the town of Northampton to establish agricultural institutions for the instruction of farmers. And this court held that that town, by virtue of its right to receive this charitable gift at the end of sixty years, had an interest in the estate, and could appeal from a decree of the judge of probate respecting the probate of the will. *Northampton* v. *Smith,* 11 Met. 390.

In a very recent case, a testator gave a piece of land and one thousand dollars, after the death of his wife, in trust to maintain a school-house and school, and added, " In order to accomplish said object, said trustee and his heirs shall have reasonable time to bring the same about with the funds left for that purpose." Twenty years after the death of the testator, and eight after the death of his widow, the school not having been established, the

residuary devisees and legatees brought a bill in equity against the trustee to recover the land and money; but it appearing tha⁺ the trustee was diligently endeavoring to increase the fund in his hands by causing it to accumulate until it should be sufficient to effect the purpose of the testator, the court dismissed the bill. *Tainter* v. *Clark,* 5 Allen, 66.

Dr. Franklin, who died in 1790, left legacies of £1000 sterling to each of the cities of Boston and Philadelphia to be lent to young married artificers, with sureties, and to be repaid by yearly instalments of one tenth, with interest, and directed that this should go on for one century, and with a part of the fund for another century, at the expiration of which he gave the principal to the city and the commonwealth. In 1827 Chief Justice Gibson spoke of this bequest of money to the city of Philadelphia, to be lent to young mechanics, as belonging to a class of charities, the validity of which had never been questioned. *Witman* v. *Lex,* 17 S. & R. 91. Many years afterwards the same learned judge expressed an opinion that a similar bequest was void, upon the ground that charities were subject to the ordinary rule limiting accumulations. *Hillyard* v. *Miller,* 10 Penn. State R. 326. This opinion excited surprise in Pennsylvania; and it has since been overruled in the same court, and the decision of the case in which it was delivered sustained upon the ground that such loans constituted no charity. Hill on Trustees, (3d Amer. ed.) 455 *n. Philadelphia* v. *Girard,* 45 Penn. State R. 1. It is not within the scope of our present inquiry to consider whether this last position can be maintained. See *St.* 43 Eliz. *c.* 4, § 1; Duke, (Bridgman's ed.) 131; *Attorney General* v. *Ironmongers' Co.* Coop. Pract. Cas. 283; *Zimmerman* v. *Anders,* 6 Watts & S. 220, 221.

In this state of the authorities, and in the absence of any legislation upon the subject, we are not prepared to say that accumulation for a charitable purpose can in no case be allowed for a fixed period of more than twenty-one years, or for a contingent period beyond a life or lives in being and twenty-one years afterward. In principle, the uncertain duration of a life or lives in being would seem to have no natural relation to a

permanent charity. And the justice or policy of a rule is not apparent, which would prevent a person charitably disposed, but whose property is not large enough to carry out his charitable intent by an accumulation of twenty-one years, from founding a charity, except through the indirect measure of a life or lives in being; especially when the period of accumulation which he needs or selects is one much within the average duration of accumulation under the common rule. The objection that accumulation for a charitable purpose, unless governed by the common rule, might go on indefinitely, would certainly be entitled to grave consideration before finally determining what the limit is. It is possible that the power of a court of chancery over charities might enable it to so modify the donor's particular directions as to carry out his general charitable intent without violating any rule of public policy, if a case should arise in which those directions and that policy were in danger of coming into conflict. But it is not necessary for the decision of this cause to define the limit of lawful accumulation for charitable purposes.

The duties imposed by the testator upon his executors in this regard are to pay annually out of the income of the real estate two hundred dollars to the widow of his deceased brother for life, and one hundred dollars to the trustees of the Salem Savings Bank for fifty years, and after deducting these payments annually, to divide the remaining income among his brother's children, and at the expiration of the fifty years to divide the remainder of the estate among his brother's grandchildren. The annuity of one hundred dollars yearly for fifty years is payable at fixed times, subject to no contingency, and, independently of the direction for accumulation, would be open to no legal objection if the annuitant were an individual. The intention to devote these sums to the charitable purpose of supporting aged and destitute persons is manifest. Each sum paid is separated from the bulk of the estate, and vested in the trustees appointed to receive it, as soon as the payment is made, and before the intended accumulation of the interest upon it begins.

Even a gift to an individual, which on a fair construction

vests within the period allowed by law, is held valid, although accompanied by a void direction for accumulation. *Josselyn* v *Josselyn*, 9 Sim. 63. *Blease* v. *Burgh*, 2 Beav. 221. *Saunders* v. *Vautier*, 4 Beav. 115 ; *S. C.* Craig & Phillips, 248. *Peard* v. *Keke-wich*, 15 Beav. 166. *Lane* v. *Lane*, 8 Allen, 350. The reasons are much stronger for not allowing illegal directions for the accumulation or management of a fund, devoted to charitable purposes, to defeat the gift, and for carrying out the scheme of the testator as far as the law will allow, if it cannot be followed to its full extent. *Attorney General* v. *Caius College*, 2 Keen, 163. *Martin* v. *Margham*, 14 Sim. 230. *Thompson* v. *Thompson*, 1 Colly. R. 388, 400. *Attorney General* v. *Greenhill*, 33 Beav. 193. *Attorney General* v. *Pyle*, 1 Atk. 435. *Attorney General* v. *Catherine Hall*, Jacob, 395. *Magistrates of Dundee* v. *Morris*, 3 Macq. 134. *Baker* v. *Smith*, 13 Met. 41. *Drury* v. *Natick, post*, 169. It is generally stated in the English books that a direction to accumulate income for a period beyond that allowed by the common law is wholly void. 2 Spence on Eq. 181, 182. Lewin on Trusts, (3d ed.) 111, and cases cited. But perhaps, in the case of property set apart in the hands of trustees for a charitable purpose, each annual addition of the income to the principal might be treated as distinct, and the accumulation held good for twenty-one years at least, if not beyond that time. And see *Phipps* v. *Kelynge*, 2 Ves. & B. 57 *n.*, 62, 63 *n.*

It was contended for the heirs at law that no title, legal or equitable, would vest in the charity until the expiration of the fifty years. But we think such is not the true construction of the will. The clause relied on is as follows: " At the expiration of fifty years the sum which shall have accumulated shall be appropriated by a society of ladies from all the Protestant religious societies in Salem to provide and sustain a home for respectable destitute aged native-born American men and women." Here are no words of transfer of title, and the ladies mentioned are not a corporation capable of taking the legal estate. The more reasonable interpretation is that the testator intended to continue the title of the fund in the hands of the trustees to whom he gave it in the first instance, and to clothe the proposed

society of ladies with visitatorial powers as managers of the charity. What those powers may be we have no occasion now to decide; it is enough to say that the will does not transfer the title from the trustees to them.

Neither is it necessary to consider whether the trustees of the Salem Savings Bank are authorized by law to hold a fund for this purpose; inasmuch as they have declined the trust, and asked to have another trustee appointed in their stead, which there is no doubt of the authority of the court to do. *Bliss* v. *American Bible Society*, 2 Allen, 337. *Reeve* v. *Attorney General*, 3 Hare, 191. Upon the appointment of such a trustee, it will be the duty of the executor to pay to him the annuity of one hundred dollars annually for fifty years, according to the will. If, acting with good fidelity and discretion, the funds accumulate in his hands, the accumulations will certainly belong to the charity. *Aylet* v. *Dodd*, 2 Atk. 238. *Attorney General* v. *Bowyer*, 3 Ves. 728, 729 *n.*; *S. C.* 5 Ves. 301. *Society for Propagating the Gospel* v. *Attorney General*, 3 Russ. R. 142. *Forbes* v. *Forbes*, 18 Beav. 552. *American Academy* v *Harvard College*, above cited. *Tainter* v. *Clark*, 5 Allen, 69 Any question of law which may hereafter arise in the administration of the charity may be determined upon a bill filed by the trustee to obtain the instructions of the court, or upon an information by the attorney general, if necessary, in behalf of the public.                    *Decree accordingly.*