HERBERT L. MOELLER ET ALS. *vs.* LAURA M. KAUTZ ET ALS.

Third Judicial District, Bridgeport, October Term, 1930.

MALTBIE, HAINES, HINMAN, BANKS AND AVERY, Js.

Argued October 31st, 1930—decided January 13th, 1931.

*George W. Crawford,* for the plaintiffs.

*Frederick H. Wiggin,* with whom was *Huntington T. Day,* for the defendants Augusta J. English *et als.*

*J. Dwight Dana,* for the defendants Harriet L. Stevenson *et als.*

*George D. Watrous* and *Harrison Hewitt,* with whom was *Mary E. Manchester,* for the defendants Edith Rogers *et als.*

MALTBIE, J. This reservation brings before us for construction certain provisions of the will of Constand A. Moeller who died June 1st, 1914. The will was executed February 18th, 1913. After making provision for the payment of debts and funeral expenses it gives, devises and bequeaths all the residue of the testator's property to trustees "to hold the same upon the following trust, with power to sell all my real and personal property (except my stock in The Narragansett Brewing Company of Providence, Rhode Island, which I direct shall neither be sold nor exchanged) and to invest and reinvest the avails thereof for the purposes of this trust; all surplus income and all avails of sales of personal property or real property shall be invested in mortgages on improved real estate in the New England States, the same to be double security for the amount loaned, and interest to be paid semi-annually in cash, and insurance and all taxes to be paid by the mortgagor." The trustees are then directed to pay an annuity to each of the testator's nine children, $2500 during the first year after his death and increasing thereafter at the rate of $100 a year until the sum of $4000 is reached, "beyond which amount their annual payments are not to be increased; said income is to be paid to each one of said children as long as any one of them survives; in other words, the incomes as above directed, not exceeding four thousand ($4000) dollars a year, are to be paid to each of my said children up to the death of the last survivor, but none of the survivors is to receive more than is above directed." If any child died before the death of the last survivor his or her child or children or their issue were to receive

the annuities provided for their parents, share and share alike. Upon the death of the last survivor of his children the testator gives all the rest and residue of this estate to his grandchildren per capita, and if any grandchild shall have died before the time of distribution leaving children the share of the parent is to be divided among them.

All nine children were alive at the testator's death, six were married and each had one or more children, and one had been married and divorced and had a living child. Since his death one daughter has died unmarried, one child has married, and a number of grandchildren of the testator have been born to the various children. At the time the will was made the ages of the testator's children varied from about forty-two years to about twenty-five years. The inventory of his estate amounted to slightly over $1,000,000 and his property was at his death substantially the same as at the time of the execution of the will; and assets to about the same amount stated in the inventory were delivered to the trustees in July, 1916. During the first year of the trust the gross income was $154,170.61, the net income was $66,456.63 and the surplus net income, $42,426.33. For the next two years the gross income was somewhat larger, while the surplus net income was $37,295.77 and $22,817.06, respectively. In the fourth year of the trust there was a large increase in the amount of income, the gross income amounting to $271,684.14 and the surplus net income to $123,-171.14. Thereafter there was a very considerable shrinkage of income and the amount varied from year to year, in one year the income not being sufficient to pay the expenses of administration and the annuities. The trustees have invested the surplus net income as it accrued from year to year, and the approximate total now amounts to more than $350,000. We are asked to

answer eight questions, but they may be summarized into two, first, is the net income of the trust above that needed to pay the annuities intestate estate and to be distributed as such from time to time or is it to be accumulated until the termination of the trust and then distributed under the will as a part of the principal; and secondly, if the latter, is such an accumulation illegal and void.

In *Colonial Trust Co.* v. *Brown*, 105 Conn. 261, 275, 135 Atl. 555, speaking of a large excess of income over the amount which would be required to meet certain annuities provided in the will then before us, we said: "In determining the disposition of such an excess of income, should it materialize, we must first search the will to see if we can find there disclosed any intent of the testator as to it. . . . We ought not, however, lightly to adopt a construction which will very likely result in an accumulation of income over a period of many years, in the aggregate amounting to an immense sum, accompanied, as it must be, with a denial of all the enjoyment of it to those in whom the beneficial interest is vested, and with an ultimate disposition to strangers to the blood of the testator's father or to descendants yet unborn." Turning to the will before us, we are at once struck by the fact that it is not silent as to any income which may be left in the hands of the trustees after the payment of the annuities. Immediately after the gift to the trustees, the grant to them of the power to sell all the property of the estate except certain stock, and the direction to invest and reinvest the trust fund, comes the provision quoted that "all surplus income" shall be invested, with the avails of the sale of assets, in mortgages of a certain type. Several things are noteworthy about this provision. The reference to "surplus income" shows that its existence was in the mind of the testator as something to be an-

ticipated; the position of that reference at the beginning of the clause concerning the method of investment, before the reference to the avails of the sale of the property, indicates that it was a matter of no small importance in his mind; its conjunction with the reference to such avails shows that he looked upon it as just as much an integral part of the trust fund as they would be; and the provision for the investment in real estate mortgages with semiannual interest payments points to the fact that he regarded it as an asset not to be held for a temporary purpose but such an one as would be invested in long term securities. We cannot assent to the contention of counsel that this reference to surplus income was purely incidental, a mere passing thought in a mind centered upon directions as to the character of the investments to be made by the trustees, for, if that were so, it would have been more natural for him to use some general terms as to investments rather than specifically and primarily to mention such income; nor do we agree with them that the significance of that reference is lessened by its position before rather than after the gifts of annuities; indeed, that rather indicates that the surplus income was a matter very much in his mind and not a mere incident to the creation of the annuities.

This view is confirmed by the further statements in the will in connection with the increase in the amount of the annuities which emphasize the direction that the children are not to receive more than $4000 a year, showing that the testator not merely anticipated an excess of income but wanted to make it clear that his children were not to share in it. Indeed, he must have known that there was every likelihood of a very substantial surplus income; when he made his will his estate amounted to a little over $1,000,000, and this was also true at his death, while the total of the

annuities he created would for the first year amount at most to $22,500 and they were to increase until a total of not over $36,000 was reached, beyond which amount he emphatically stated that they were not to go. It is evident that the likelihood of a surplus income above that needed for the annuities was in the testator's mind, that he could hardly have failed to realize that it would amount to a very substantial sum, and that, by his direction for its investment along with the avails of the sale of the property in the trust fund in the long term securities, he intended to incorporate it in the principal of that fund.

It is very likely true that the testator did not expect that there would be such a large increase in the income of the estate as actually accrued, or that there would be such a decrease in the purchasing power of the dollar as decidedly to shrink the real value of the annuities he gave. These circumstances cannot, however, justify a disregard of the plain words of the will and the intent he has expressed in it. *Bartlett* v. *Sears,* 81 Conn. 34, 40, 70 Atl. 33. Nor is it sufficient to overcome that intent that it may seem to us to be for the best interests of the grandchildren and great-grandchildren, who are ultimately to receive the principal of the trust, that the testator's children should receive the surplus income from time to time. The court cannot pass upon the wisdom of the provisions the testator has made; "its duty is to see that the testator's intention is consummated." *South Norwalk Trust Co.* v. *St. John,* 92 Conn. 168, 178, 101 Atl. 961. The emphasis which he put upon the restriction of the annual amount each of his children was to receive suggests a motive and one does not have to look far to find one that is at least legitimate. If any of his daughters did not marry, the provision he made would not be wholly inadequate for her reasonable support;

and he may have thought it undesirable that his sons, or the husbands of his daughters, should they marry, should be relieved of the necessity of exercising initiative and industry; or he may have desired to build up, and pass over to his grandchildren an estate of sufficient size, so that, divided among them, it might still be expected to give each a very substantial sum. Nor do we find anything in *Colonial Trust Co.* v. *Brown,* 105 Conn. 261, 135 Atl. 555, *Shepard* v. *Union & New Haven Trust Co.,* 106 Conn. 627, 138 Atl. 809, and *Belcher* v. *Phelps,* 109 Conn. 7, 144 Atl. 659, which militates against our conclusion. In the first case the court found expressed in the will an intent that any income above that needed for the payment of annuities should be used to discharge certain incumbrances on real estate which the trustees were directed to retain and to improve, but we discovered no intent expressed as to the disposition of the excess income after these purposes had been accomplished; and in the other two cases we point out that there was no direction for an accumulation nor any expression of an intent that the excess income should be accumulated and become a part of the principal of the trust. Confronted with a will in which such an intent is expressed, we must give it effect, unless it violates some rule or principle of law.

The trust is to terminate and the principal of the fund is to be distributed at the death of the last survivor of the testator's children, and that creates a like limitation upon the period of accumulation. It cannot therefore be extended beyond the time allowed by the rule against perpetuities for the vesting of estate. *Colonial Trust Co.* v. *Brown, supra,* p. 272. By analogy to that rule, where statutory provisions do not control, the same limitations fixed by it are generally applied in determining the period over which funds are permitted to accumulate. Thus in *Hoadley* v. *Beards-*

*ley,* 89 Conn. 270, 279, 93 Atl. 535, we stated it to be a well-established common-law principle that "trusts for accumulation must be strictly confined within the rule against perpetuities, and that, if such a trust exceeds those limits, it is void"; and in *Wilson* v. *D'Atro,* 109 Conn. 563, 567, 145 Atl. 161, we applied that rule to hold invalid a provision for an accumulation over a period not measured by any life which extended for more than twenty-one years. Counsel who are seeking a decision that the accumulation before us is illegal do not question this principle, but they do claim that we may hold a trust for accumulation illegal as unreasonable and against public policy even though it does not extend beyond the period allowed by the rule against perpetuities, and that we ought to do it in this case. Previous to the enactment of the "Thellusson Act" in England in 1800 all accumulations which had come before the English court and which did not run beyond that period had been upheld and it is generally stated that the common law permitted accumulations not exceeding it. *Thellusson* v. *Woodford,* 11 Ves. Jr. 112, 146; *Odell* v. *Odell,* 92 Mass. (10 Allen) 1, 5; *Pray* v. *Hegeman,* 92 N. Y. 508, 514; 1 Perry on Trusts (7th Ed.) § 393; Lewin on Trusts (13th Ed.) p. 126. This is the general rule applicable in any except the most unusual situations. There is, however, in the courts a power, rarely to be exercised and only in a clear case, to declare void testamentary provisions of the nature of the one we are considering, aside from any violation of settled rules of law, because under the peculiar facts of the case they contravene a sound public policy. *Colonial Trust Co.* v. *Brown, supra,* p. 285. Thus it is the general rule that the limitations upon the period during which income may accumulate do not apply to charities, yet in *Woodruff* v. *Marsh,* 63 Conn. 125, 138, 26 Atl. 846, we

recognized the right of the courts to curb the extent of accumulations for such purposes. See *Colonial Trust Co.* v. *Waldron,* 112 Conn. 216, 222, 152 Atl. 69; *Girard Trust Co.* v. *Russell,* 179 Fed. 446, 452. In *Belcher* v. *Phelps,* 109 Conn. 7, 18, 144 Atl. 659, we said that if the will then before us had provided for an accumulation "we should be obliged to determine whether the limitation imposed upon the enjoyment of this property through such accumulations was not an unreasonable restraint on alienation and in conflict with settled principles of public policy." We did not mean by this to suggest that any different principles were applicable to such accumulations than those we have stated, but we were merely giving a summary statement of them in the light of the basic principle underlying both the general rule and the possible exception.

The facts of the case before us certainly do not bring it within any exception to the general rule. The accumulation of excess income is large, but almost two-thirds of it accrued in the first four years of the trust, and that which has of late accrued from year to year has been relatively small in amount; indeed, if the interest earned upon the surplus income which had accrued in the early years of the trust and was then added to the principal were to be disregarded, there would be undoubtedly a much smaller surplus during the later years. Nor is the probable duration of the joint lives of the testator's children as fixed by the mortality tables, stated by counsel to be thirty-nine years longer, a time so unreasonable as to justify a defeat of the testator's intent.

To questions 1, 2, 3, 4, 6 and 7, we answer that the will does provide for the accumulation of the surplus income during the period of the trust and at its termination that income is to be distributed to those then entitled as a part of the principal of the

fund, and that it is not therefore intestate estate to be distributed as such; and to question 5, we answer that the provision for the accumulation of the surplus income is not illegal and void. Question 8 is too general to justify an answer.

No costs will be taxed in this court to either party.

In this opinion the other judges concurred.