HARTFORD NATIONAL BANK AND TRUST COMPANY, TRUS-
TEE (ESTATE OF WALTER R. JONES) *v.* YEARLY MEET-
ING OF FRIENDS FOR NEW ENGLAND ET AL.

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, Js.

Argued March 6—decided May 8, 1951

*Robert Ewing,* for the plaintiff.

*James W. Carpenter,* for the named defendant.

*William K. Cole,* with whom was *Lucius F. Robinson, Jr.,* for the defendant Ethel M. Jones.

BROWN, C. J.   The principal question presented upon the reservation of this action for the construction of the will of Walter R. Jones concerns the disposition of surplus income of a trust under the will.

The testator died at Hartford September 22, 1934, leaving a will executed by him August 24, 1934.   After making certain specific bequests and devises, he gave the life use of his shore cottage in Saybrook to his wife, and further directed that the trustee named in the fifth paragraph of the will pay to her $350 per year for its maintenance, "said sum to be paid by my Trustee from the fund created in the Fifth paragraph of this will."   By the fifth paragraph he gave the residue of his estate to the plaintiff as trustee, with the following provisions: It was to hold, invest and reinvest the estate and to collect the income until the termination of the trust.   It was also to pay in equal monthly instalments these annuities: To the testator's wife, $2400 a year during her life; to the testator's sister, Ethel M. Jones, $720 a year, to be used by her for the support of the testator's parents, Lindsey S. Jones and Alice R. Jones, during their lives; and to Elsie Peters, who was not related to the testator, $480 a year during her life or until she married.   After the death of the testator's wife, the trustee was directed to pay in equal

monthly instalments the following annuities: To Mabel Taber, a cousin of the testator, $300 a year during her life or until she married; to the testator's sister, Ethel M. Jones, $480 a year during her life; and to Elsie Peters, $240 a year during her life or until she married, this annuity being operative to increase the annual total payable to her to $720. The paragraph went on to provide that if any of the annuitants to whom these payments were to be made "shall be in want, I direct my Trustee in its sole discretion to add to" the annuities "if in its discretion the trust fund warrants such additional payments." The paragraph finally made provision to the effect that "when there are no further payments to be made under said trust fund" as specified in the provisions for the annuitants recited above, "I direct that my Trustee shall pay over the principal of said trust fund as then constituted, absolutely and free of trust," to the defendant Yearly Meeting of Friends for New England.

For four years in his youth, until 1901, the testator attended what was then known as Friends School in Providence, Rhode Island, which is owned by the Yearly Meeting of Friends for New England. Thereafter, he occasionally attended reunions at the school. There was no issue of the testator's marriage. His wife survived him. For some time prior to the execution of his will, the testator's parents made their home in Dorchester, Massachusetts, with his sister Ethel M. Jones, who never married. She was a school teacher until her retirement in 1944. The testator had no other sister and his only brother had died without issue in 1911. As the testator well knew, his mother had been an invalid for years before the execution of the will, and neither parent had enough income to live on. His sister's annual income did not exceed $2000. Down to the execution of the will, the testator, who was familiar

with the foregoing facts, advanced $60 per month to his sister toward his parents' support, and she contributed $10 per week in addition to certain other items. At the time the will was executed, the ages of the annuitants named in it were: Lindsey S. Jones, 82 years; Alice R. Jones, 75; testator's wife, 66; Ethel M. Jones, 51; Elsie Peters, 44; and Mabel Taber, 40. From January 1, 1934, until the death of the testator on September 22, 1934, he received from his property $5651.99 in dividends and interest. During his brief interview with the lawyer who prepared the will, the testator stressed the importance of providing fixed monthly amounts for his beneficiaries whether or not this involved invasion of principal, but did not refer to the possibility that surplus trust income might accrue. The attorney had no information as to the amount of the testator's estate or as to the ages of the annuitants. The testator had executed an earlier will on January 15, 1932, which was revoked by the one before us. Both wills followed the same general testamentary scheme. In the earlier will, as in this one, the great bulk of the testator's estate was left in trust for the payment of the life annuities specified and for the eventual payment of the fund to the defendant Yearly Meeting. All the annuitants named in the first will were similarly provided for in the second, although with some variation in the amounts, and two additional annuitants were included. The testator, who had always lived modestly, had acquired the property devised by each of these wills substantially through his own earnings.

On October 1, 1934, the will was admitted to probate by the Court of Probate for the district of Hartford and the plaintiff bank qualified as executor. The appraised value of the estate was $157,317.28. It consisted mostly of income-producing securities. The bank's final account as executor was allowed, and on

May 1, 1935, it qualified as trustee under the will. The appraised value of the assets distributed to it as trustee was $133,437.18. Since May 1, 1935, with the exception of the year 1936, the annual income of the fund has exceeded the amount paid to annuitants and for other expenses, and the total net accumulation of surplus income as of May 1, 1950, was $9405.91. The testator's wife died August 3, 1950. Alice R. Jones died April 27, 1938, and Lindsey S. Jones, January 26, 1943. On August 21, 1950, the approximate market value of the principal of the trust was $157,937. It is probable that additional surplus income will accumulate in the future, and the rate of accumulation will be greatly increased because of the reduction in the amount of annuities payable under the terms of the trust from and after the death of the testator's widow.

The primary questions asked in this case,[1] as was true of the decisive questions in *New Haven Bank* v.

[1] The questions are:

"1. Is it the duty of the plaintiff to accumulate said surplus income and hold the same as accumulated income to be added to the principal of the trust created by the will of Walter R. Jones upon the death of all the annuitants?

"2. Is it the duty of the plaintiff to add said surplus income to the principal of said trust annually as the same accrues?

"2(a). Under the provisions of the Fifth paragraph of the Will, did the remainder of the Testator's estate vest in the Yearly Meeting of Friends for New England upon the death of the Testator?

"3. Is said surplus income intestate estate of said Walter R. Jones?

"4. If the answer to question 3 is 'Yes,' then at what intervals should said intestate income be distributed?

"5. If the answer to question 3 is 'Yes,' then is it the duty of the plaintiff to distribute said intestate income: (a) to any personal representatives who may be appointed to represent the intestate successors of said Walter R. Jones? (b) to the beneficiary or beneficiaries of the estate of said intestate successors? (c) to the persons whom the Court of Probate may determine are entitled thereto?

"6. Are counsel fees and expenses, if allowed by the court in this action, to be paid from said surplus income, or from other income of said trust, or from the principal thereof, or partly from each of the foregoing, and, if the latter, in what order and proportions?"

*Hubinger,* 117 Conn. 417, 167 A. 914, concern the duty of the trustee as to the excess of income over the amount required to pay the annuities. As we there stated (p. 420): "Where a testator establishes a fund the income from which is to be used for certain purposes but that income is in excess of the amount required for those purposes, the question whether the excess shall accumulate and be added to the principal or shall be otherwise disposed of depends primarily upon the intent of the testator." As was also there pointed out (p. 421), however, even though the will contains no expression of an intent that the excess income shall be accumulated, such course must be followed where the disposition of the excess as it accrues would be contrary to the scheme of the testator as disclosed in the will. Accordingly, the absence of an accumulation provision is only one of several indications of the testator's intention and, in view of the character and contents of the will, may be one by no means as significant as those of a contrary import. *Townsend* v. *Wilson,* 77 Conn. 411, 415, 59 A. 417. In short, a will may be effective to require the accumulation of excess income either by reason of its express terms or by implication from its general scheme of disposition. We also said in *New Haven Bank* v. *Hubinger,* supra, 423: "It may be stated, therefore, generally speaking, that where the will discloses an intent that excess income shall accumulate, or its distribution as it accrues will be contrary to the scheme of the will, it should be permitted to accumulate, unless, indeed, such an accumulation would be invalid; *Hoadley* v. *Beardsley* [89 Conn. 270, 280, 93 A. 535]; *Belcher* v. *Phelps* [109 Conn. 7, 18, 144 A. 659]; *Wilson* v. *D'Atro,* 109 Conn. 563, 567, 145 Atl. 161; *Colonial Trust Co.* v. *Waldron,* 112 Conn. 216, 222, 152 Atl. 69; *Moeller* v. *Kautz,* 112 Conn. 481, 152 Atl. 886; that where the will discloses an intent that there shall

be no accumulation of excess income or such an accumulation would be contrary to the scheme of the testator, or where the will discloses no intent either way, the excess income should be distributed to those entitled to it as it accrues." It remains to construe this will in the light of these principles.

The will contains no express provision for the accumulation of excess income. The testator's scheme for disposing of his property does, however, very clearly appear from the will considered as a whole. Speaking generally, it shows that his sole purpose in setting up the trust was to devote his property to but two objectives: First, within the limits specifically defined, to provide for the individual annuitants named, and second, after receipt by the annuitants of what was to go to them, to devote the balance to the Yearly Meeting of Friends for New England, as owner of what was formerly Friends School, the scene of his early school days, which very evidently were of fond memory. In view of the scope of the testator's purpose, his knowledge of the value of his estate and the income which it was likely to produce, and the diminishing and relatively minor amount which in all probability would prove requisite to satisfy his specified benefactions for the annuitants, it would be strange indeed if in making his will he had contemplated that, after the payments had been made to them, any part of the balance of his property, whether income or principal, should go to anyone other than the Yearly Meeting.

The decisive question is whether the will discloses that it was the testator's intent that the excess income should go to the Yearly Meeting instead of becoming intestate. A general principle of will construction is of significance in this connection. "A construction of a will which will avoid intestacy is to be sought; to this end, the presumption must be entertained that the tes-

tator did not intend intestacy as to any part of his estate." *Beardsley* v. *Johnson*, 105 Conn. 98, 112, 134 A. 530. That the testator had no intention that the excess of income should become intestate sufficiently appears from the language in the will which relates to the trust fund created for the accomplishment of what we have stated was his sole purpose. The fifth paragraph of the will, after devising all of the residue of the testator's property to the plaintiff bank "in trust," provides that as trustee it shall pay the annuities prescribed "from the income or from the principal of said trust fund if it shall be necessary to use said principal in order to make said payments." It is apparent that the testator contemplated the possibility that in some years the income might shrink to such an extent that it would be necessary to use principal to pay the annuities. He, however, made no provision for the recoupment of the principal out of surplus income in other years, as would have been natural if his intent had been to keep the income and the principal as two separate funds. The language employed evidences the testator's intent to create a "trust fund" comprised of income as well as principal as the most effective method of insuring the realization in fullest measure of his purpose. Nor is this intent negatived by the direction that income shall be utilized first to satisfy the annual amounts to be paid out.

That the "said trust fund" contemplated by the testator was a single entity so constituted is confirmed by the repeated references in the will to the fund, without more, in directing how the trustee is to function in carrying out his purpose of devoting his property to what were his only two objectives. Thus, the fourth paragraph orders that the $350 annual payment to the widow for the maintenance of the shore cottage shall "be paid by my Trustee from the fund created in the

Fifth paragraph of this will." The testator must have contemplated that these small annual payments would ordinarily have been made out of income. Accordingly, his direction that the payments be made out of "the fund" indicates that, in his mind, "the fund" meant combined principal and income. Again, subsection (e) of the fifth paragraph provides that if any of the annuitants named in the preceding subsections "shall be in want, I direct my Trustee in its sole discretion to add to the sums payable under said subsections, if in its discretion the trust fund warrants such additional payments." Finally, subsection (f) reads: "When there are no further payments to be made under said trust fund . . . I direct that my Trustee shall pay over the principal of said trust fund as then constituted, absolutely and free of trust," to the Yearly Meeting. While subsection (f) contains the words "principal of said trust fund," they cannot be construed as negativing the testator's intent that accumulated income as well as principal should comprise the trust fund. Instead, they confirm that such was his intent. This is evident from the qualifying words "as then constituted," which immediately follow. Read in its entirety, the clause discloses the testator's intent that all excess income as it accumulates year by year is to become a part of the principal of the trust fund, which upon the termination of the trust the trustee is directed to pay over to the Yearly Meeting. In short, the scheme of the will, which manifests the testator's intent, is to guarantee, by means of the trust fund comprised of principal plus any annually accruing excess income, first, the payments to the annuitants, and second, the payment of all the rest to the Yearly Meeting. It is our conclusion that the accumulated excess income as of May 1, 1950, and any such annual excess of income hereafter, becomes a part of the principal of the trust fund to be ultimately paid

to the Yearly Meeting of Friends for New England upon the termination of the trust under the will.

We have considered all of the cases cited by counsel. As is conceded, the controlling legal principles are fully stated, and the decisions are carefully reviewed in *New Haven Bank* v. *Hubinger*, 117 Conn. 417, 167 A. 914. To repeat a discussion of the cases would serve no purpose. Suffice it to say that the *Hubinger* case and the case of *Stempel* v. *Middletown Trust Co.*, 127 Conn. 206, 15 A. 2d 305, upon which counsel contending that the accumulated excess income is intestate primarily rely, as well as the others which they cited to this proposition, are distinguishable upon their facts for reasons which sufficiently appear from our discussion above. The cases in which we held that the excess income did accumulate as a part of the trust fund, where the factual situation more closely approximated that in the instant case, are *Townsend* v. *Wilson*, 77 Conn. 411, 59 A. 417; *Bridgeport Trust Co.* v. *Marsh*, 87 Conn. 384, 87 A. 865; *Lyman* v. *Parsons*, 26 Conn. 493, 516; *Hoadley* v. *Beardsley*, 89 Conn. 270, 282, 93 A. 535; *Moeller* v. *Kautz*, 112 Conn. 481, 485, 152 A. 886; *United States Trust Co. of New York* v. *Shelton*, 130 Conn. 68, 71, 32 A. 2d 51.

We answer the questions upon which our advice is asked as follows: 1. No. 2. Yes, and it is the further duty of the plaintiff forthwith to add to the principal the total of the accumulated surplus income as of May 1, 1950. 2(a). Yes. 3. No. Questions 4 and 5 call for no answer. 6. Counsel fees and expenses, if allowed by the court in this action, are to be paid from principal.

No costs will be taxed in this court to any party.

In this opinion JENNINGS, BALDWIN and INGLIS, Js., concurred.

O'SULLIVAN, J. (dissenting). A testamentary trustee may legally accumulate surplus income only when the will expressly or impliedly authorizes him to do so. *Hoadley* v. *Beardsley,* 89 Conn. 270, 280, 93 A. 535. The will under consideration is devoid of any express direction to accumulate. In finding an implied direction, the majority reach a conclusion with which I cannot agree.

If the language by which a testator has expressed himself renders his intention uncertain, the doubt may properly be resolved by examining the will in the light of the circumstances surrounding him when he executed it. The circumstances in this case are highly illuminating and point unmistakably, it seems to me, to the fact that the disposition of surplus income was completely overlooked by the testator. If this be true, the surplus is intestate estate. *New Haven Bank* v. *Hubinger,* 117 Conn. 417, 423, 167 A. 914.

This was the will of a very feeble man, dying from cancer of the esophagus. On July 29, 1934, an exploratory abdominal operation was performed on him. Oral feeding became impossible by August 16 and from then until he died, a few weeks later, nourishment was provided by intravenous injections. Between 4 p. m. and 8 p. m. on August 24, he received blood by transfusion in preparation for a desperate gastroenterostomy which was to be performed the following day. Almost immediately after the transfusions were completed, an attorney was admitted to the bedside to draft a will which the testator had expressed a desire to execute. The two men talked together for less than twenty minutes. The attorney was given no information as to the size of the testator's estate or the ages of the annuitants. Not a word was spoken by either man concerning the disposition of surplus income. Indeed, nothing was said about the possibility that the trust income might at

some future time exceed the requirements of the annuity payments. This was an understandable omission. As in 1932, when the testator had executed a prior will, the nation was crippled by a major economic depression. Returns from investments had shrunk from previous levels and in many instances had entirely disappeared. Both in 1932 and in 1934, it was natural for the testator to be concerned, as he was, not with the possibility that at some future time the trust income might become greater than was necessary to pay the stated yearly sums which he wished his wife, father, mother and sister to enjoy, but rather with the probability that it would prove insufficient for that purpose. This is clearly borne out by the trend of the conversation which he had with the attorney. The one dominant thought which the testator stressed, as he explained his wishes, was the absolute necessity of maintaining the annuities at the amount at which he had set them, even if this required an invasion of the principal. When, then, he ordered his trustee, at the termination of the trust, to turn over to the Yearly Meeting the principal "as then constituted," he was anticipating, not that the principal would be enhanced by the addition of surplus income, but rather that it would be depleted by invasions made to maintain the annuities.

The opinion ignores a recital of these revealing circumstances, in the light of which the will discloses nothing to spell out the intent which the majority attribute to the testator. As in the *Hubinger* case, the possibility of surplus income did not enter the dying man's mind. The will reflects the discussion between him and the attorney, who immediately thereafter prepared a draft of the instrument and presented it for formal execution.

It may be that had the testator thought about surplus income he would have ordered its accumulation. That,

however, is not the point. The fact is that he completely overlooked the matter. Under the guise of construction, the majority are adding to his will a provision which the testator did not even consider. For a more comprehensive analysis of the position which I take, reference is made to the excellent brief filed on behalf of the defendant Ethel M. Jones. A-283 Rec. & Briefs 73.