**The SECOND NATIONAL BANK OF NEW HAVEN, Executor of the Will of Frederick F. Brewster, late of Hamden, Deceased, Plaintiff-Appellee-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellant-Appellee.**

**No. 89, Docket 28868.**

United States Court of Appeals
Second Circuit.

Argued March 18, 1965.

Decided Sept. 28, 1965.

Curtiss K. Thompson, New Haven, Conn. (John H. Weir, New Haven, Conn., of counsel), for plaintiff-appellee-appellant.

John B. Jones, Jr., Atty., Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson, Timothy B. Dyk, Attys., Dept. of Justice, Washington, D. C., of counsel; Robert C. Zampano, U. S. Atty., Dist. of Connecticut, on the brief), for defendant-appellant-appellee.

Before MOORE, KAUFMAN and MARSHALL,* Circuit Judges.

MOORE, Circuit Judge.

The Second National Bank of New Haven, Executor of the Will of Frederick F. Brewster (referred to as the executor† and the Bank), brought this suit to recover federal estate taxes in excess of $1,600,000 allegedly assessed erroneously and illegally against the estate and paid under protest. The facts are not in dispute.

Frederick F. Brewster, a resident of Connecticut, died on September 16, 1958. By will dated June 5, 1958, he made certain specific bequests and directed that "the rest, residue and remainder" be distributed: one-third "thereof" to the Bank as trustee in trust to pay the in-

---

* Judge Marshall heard oral argument and participated in the decision in this case, formally concurring therein prior to his becoming Solicitor General.

† An individual executor resigned.

come therefrom to his wife, Margaret, for life and upon her death to convey the principal to three of his children; and two-thirds to the trustee to be held in separate trusts for his grandchildren, the trusts to terminate at various times specified in the will. On July 1, 1958, by codicil undoubtedly designed to qualify his wife's one-third for the marital deduction, as authorized by section 2056 of the Internal Revenue Code of 1954, he modified the will to give her a power of appointment over the principal of her one-third; if not exercised, the principal was to go to his three children originally named. In all other respects, except one specific bequest, the will was expressly republished and confirmed.

The will in its first paragraph [1] makes specific provision for the payment "out of my estate" of "death taxes" by directing the executor to pay them along with debts and funeral expenses. The taxes are defined as such as "may legally be assessed upon or with respect to any property which is required to be included in my gross estate under the provisions of any death tax law." To make doubly certain that the beneficiaries not be charged with estate taxes prorated against their shares, the testator provided that: "The provisions of any statute requiring the apportionment or proration of such taxes among the beneficiaries of this will or the transferees of such property, or the ultimate payment of such taxes by them, shall be without effect in the settlement of my estate." The direction and intent set forth in paragraph "One" would seem to be clear and unambiguous to the effect that taxes were to come out of his residual estate and that despite any contrary statute the testator specifically wished to avoid any proration.

When the federal estate tax return was filed, Margaret's one-third share of the residue was computed before the residue was reduced by federal taxes, thus placing the entire tax burden on the two-thirds share passing to the testator's grandchildren. Accordingly, the executor reported a gross estate of $13,201,347.91 from which it deducted specific bequests, debts and administration expenses, the marital deduction comprising Margaret's undiminished share of the residue augmented by a "widow's allowance" of $350,000 made by the Connecticut Probate Court for the District of Hamden but reduced by $281,752.70 of "other death taxes." A taxable estate of $8,392,892.80 was declared on which a tax liability of $4,028,613.85 was reported.

Upon audit, the District Director of Internal Revenue (the Director) disallowed the $350,000 widow's allowance as a part of the marital deduction (one-third, $116,666.67 was allowed because it would otherwise have passed to the marital trust) and decreased the marital trust from $3,630,243.95 to $1,682,846.59. The latter reduction was based upon the Director's construction of paragraph "One" of the will as requiring the deduction from the gross estate of all federal, state and state succession taxes before the marital trust of one-third of the residue could be computed. Thus, all the residuary legatees were required to share the tax burden equally. To arrive at his figure, he submitted an "explanation of items" showing an adjusted gross estate of $12,380,897.22 from which he deducted certain bequests, various state taxes and a federal estate tax ($5,108,442.48), leaving a residue of $5,048,539.76, one-third of which, $1,682,846.59, he allowed as the marital trust. Upon the basis of this adjustment, the Director by 30-day letter asserted a tax deficiency of $1,336,468.40 which the executor paid. This suit for refund followed on the theory that Mar-

---

1. "ONE: I direct my executors hereinafter named to pay out of my estate my just debts and funeral expenses and any death taxes which may be legally assessed upon or with respect to any property which is required to be included in my gross estate under the provisions of any death tax law.

The provisions of any statute requiring the apportionment or proration of such taxes among the beneficiaries of this will or the transferees of such property, or the ultimate payment of such taxes by them, shall be without effect in the settlement of my estate."

garet's share should not have been diminished by federal taxes, thus increasing the marital deduction and eliminating the assessed deficiency.

After receipt of the 30-day letter, the executor in November 1961 applied to the Probate Court in Connecticut for a determination as to how, under Conn.Gen. Stat. sections 12–400, 401(a), 404, 405 (1964 Rev.), the federal estate tax on the residuary bequests should be prorated between those bequests.[2] The Probate Court approved the executor's proposed proration on the theory that it could not say that under state law there was "a clear and unambiguous direction against proration among shares of the residue; and such it must be if there is to be no proration in the residue [citing cases]."

Upon motion by the plaintiff-executor for summary judgment, the District Court held (1) that the widow's allowance of $350,000 did not qualify as part of the marital deduction; (2) that the Connecticut proration laws apply because there was no "clear and unambiguous direction" to the contrary; (3) that the federal court was not bound by the Probate Court's determination in virtually a non-adversary proceeding; and (4) that the marital trust was not to be reduced by any portion of federal estate tax liability.

Upon appeal the Government asserts error in the trial court's conclusion that the language of paragraph "One" of the will is not a clear and unambiguous direction against proration.

The problem to be resolved is succinctly stated (in its brief) by the Executor:

" * * * if the Connecticut proration statutes do not apply, as the United States contends, all of the federal estate tax is payable from the estate before the residuary is determined, the widow's trust of one-third of the residue bears one-third of the amount of the federal estate tax and the amount of the marital deduction is reduced by that one-third amount. On the other hand, if the Connecticut proration statutes do apply, as plaintiff contends, the amount of the widow's trust is determined before the payment of the federal estate tax, at least on the residue; that trust, being itself exempt from tax as part of the marital deduction, bears no part of such tax; and the marital deduction is the full amount of the property passing to the widow. Thus, the basic issue is whether or not the Connecticut proration statutes apply in this case."

It would be difficult to conceive of a clearer direction expressing the thought

2. Section 12–401(a) is the most pertinent of these statutes and provides in part: *"Proration of estate taxes. Procedure.* (a) When it appears from any administration account or in any appropriate proceeding in the probate court that an executor, administrator, temporary administrator, trustee or other person acting in a fiduciary capacity has paid a death tax levied or assessed under the provisions of chapter 217, hereinafter called the Connecticut estate tax, or under the provisions of the United States internal revenue code or under any death tax law of the United States hereafter enacted, hereinafter called the federal estate tax, upon or with respect to any property required to be included in the gross estate of a decedent under the provisions of any such law, the amount of the tax so paid, except when a testator otherwise directs in his will or when, by written instrument executed

inter vivos, direction is given for apportionment within the fund of taxes assessed upon the specific fund dealt with in such inter vivos instrument, shall, except as hereinafter provided in subsection (b), be equitably prorated among the persons interested in the estate to whom such property is or may be transferred or to whom any benefit accrues. Such proration shall be made in the proportion, as near as may be, that the value of the property, interest or benefit of each such person bears to the total value of the property, interests and benefits received by all such persons interested in the estate, except that, in making such proration, allowances shall be made for any exemptions granted by the act imposing the tax and for any deductions allowed by such act for the purpose of arriving at the value of the net estate * * *."

that death taxes, together with debts and funeral expenses, were to be paid out of the estate. The first sentence of Article One ("I direct my executors to pay out my just debts and funeral expenses and any death taxes * * *") has been held in cases where similar language was construed not only to shift the tax burden to the residue as an expense of administration, Starr v. Watrous, 116 Conn. 448, 165 A. 459 (1933), but also as the equivalent of a direction against proration among the residuary legatees. Crump v. Crump, 20 Conn.Supp. 471, 140 A.2d 143 (Super.Ct.1957). The "inclusion of them [taxes] in the same classification as debts, funeral expenses * * *" is an expression of "an intention that they should be paid out of the estate in the same way and from the same funds as these other charges." Starr v. Watrous, supra, 116 Conn. at 453, 165 A. at 460.

Any far-fetched doubt as to the testator's intent in the first sentence of paragraph "One" is quickly dispelled by the second sentence in which he specifically declares that "the provisions of any statute requiring the apportionment or proration of such taxes among the beneficiaries * * * shall be without effect in the settlement of my estate." The trial court conceded that "the first sentence shifts the tax burden to the residue"; but was of the opinion that "the clause in the second sentence of Article one referring to the ultimate payment of taxes by them [the beneficiaries]" created a conflict with the first sentence and, therefore, an ambiguity in the direction against proration.

There are two fallacies in the trial court's position. First is the assumption that the "beneficiaries" in the second sentence are intended as the residual legatees only and, second, is the assumption, built upon the first, that the residuary legatees "are not to be held for the 'ultimate payment' of death taxes." From these assumptions, the court reaches the conclusion that, since "some legatees must pay the death taxes out of their share of the estate," "[t]o direct that neither pre-residuary [in the first sen-

tence] nor residuary legatees [in the second sentence] are to be liable for death taxes, although testator must have known that the taxes must come from one or the other of these sources, renders such directions ambiguous." 222 F.Supp. at 454–455. But such ambiguity results only from the court's assumptions—not from the language of the will. The testator was not directing that his beneficiaries were not to be affected in any way by the payment of death taxes. His very explicit treatment of the subject in the initial paragraph evidences his awareness of the necessity of their payment. The sentence deals with the possible provisions of "any statute requiring the apportionment or proration of such taxes" or of [any statute requiring] "the ultimate payment of such taxes by them." The "them" refers to "the beneficiaries of this will or the transferees of such property." The words "ultimate payment" can refer only to the type of statute which might require ultimate payment on an apportioned basis. Such statute the testator declared was to be "without effect in the settlement of my estate." Thus, in summary, the testator specifically wished to have death taxes paid out of his estate but without proration. Once these were paid, the executor could undertake to comply with his remaining wishes. Ultimately there would be a residue. A fortiori without tax deductions from the pre-residuary bequests, the residue would be diminished by the federal estate tax and each of the three trusts equally diminished by one-third of that amount.

Nor can ambiguity be found in the testator's republication of his will to qualify the marital trust under section 2056. The trial court also found an ambiguity in the fact that a direction against statutory proration was included in the original will although the marital trust was then not qualified as a deduction under section 2056 and was not insulated from the burden of federal estate taxes by the Connecticut proration statutes. The court reasoned that "[t]o attribute to the testator a direction against proration where no proration was pos-

sible, would render uncertain what the testator 'did \* \* \* mean by what he did say.'" 222 F.Supp. at 454. The modification in giving his wife a power of appointment over her one-third share does not bespeak any intention to alter his wishes expressed in paragraph "One," which was specifically republished and confirmed. Moreover, the will in any event would speak as of the date of death when proration under the Connecticut statutes presented a definite problem to be guarded against. Union & New Haven Trust Co. v. Sullivan, 142 Conn. 685, 116 A.2d 908 (1955); Mead v. Close, 115 Conn. 443, 161 A. 799 (1932); Travis v. Wolcottville School Soc'y, 113 Conn. 618, 155 A. 904 (1931). With his attention focused on the consequences of the marital deduction change, the testator had ample opportunity to consider on republication any further special tax treatment for his wife's one-third share had he desired to do so. Thus, the will and codicil must be considered as "the expression of a single testamentary act." Appeal of Shey, 73 Conn. 122, 124, 46 A. 832 (1900). The reasoning in the opinion of the New York Court of Appeals in In the Matter of Duryea, 277 N.Y. 310, 317, 14 N.E.2d 369, 371, 124 A.L.R. 647 (1938), is persuasive, the court saying:

> "It is clear that it was the intent of the testatrix to direct payment of all gifts, legacies, and devises provided for under her will free from and without deduction on account of taxes properly assessed on account of such gifts, legacies, and devises, and that the taxes thereon should be paid out of her residuary estate. It must be assumed, since she affirmed that part of her original will in the codicil by which she gave the powers of appointment, that it was her intention that the taxes assessed on gifts made by her under those powers should likewise be payable out of her residuary estate."

■ The courts would indeed be making a new will for the testator if paragraph "One" were to be interpreted as a direction that federal estate taxes not be paid "out of my estate" but that they be borne solely by the "two-thirds" trusts for the grandchildren. The codicil shows a desire to qualify one-third of the residue as a marital deduction. It does not disclose an intention to have this part of the residue in effect tax free and grossly disproportionate to the other two-thirds. That which the testator did not choose to do during his lifetime the courts should not do after his death.

■ The executor and the Government have made extensive arguments as to the effect of the Connecticut Probate Court's adjudication that the Connecticut proration statutes applied. The trial court after carefully considering the arguments and the many relevant decisions concluded that "the decrees of the Connecticut Probate Court—which is not a court of record and most of the judges of which are laymen, not lawyers—under no circumstances can be construed as binding and conclusive upon a federal court in construing and applying the federal revenue laws." 222 F.Supp. at 457. This court is in accord with the trial court's conclusion as to the effect of the state decree, see Estate of Peyton v. Commissioner, 323 F.2d 438 (8th Cir. 1963), since under Connecticut law the Probate Court's decisions are not binding on the state's higher courts, Heiser v. Morgan Guaranty Trust Co., 150 Conn. 563, 192 A.2d 44 (1963), and are even subject to collateral attack in another probate district, Culver's Appeal from Probate, 48 Conn. 165, 172–174 (1880). Under the circumstances, it was unnecessary "to make a finding as to whether the proceedings in the Probate Court were collusive or nonadversary in nature" and the court properly refrained from so doing.

The question of the District Court's failure to include the $350,000 widow's allowance is no longer before this court because the executor concedes that the Supreme Court's decision in Jackson v. United States, 376 U.S. 503, 84 S.Ct. 869, 11 L.E.2d 871 (1964), handed down after the trial court's decision and before argument of this appeal, is controlling. In that decision, the Supreme Court held,

as did the trial court here, that the allowance was a terminable interest and, therefore, did not qualify for the marital deduction.

Nor is the question of the proper computation of the judgment before us in view of our conclusion that the proration statutes do not apply.

As the Government states (in brief), "In this unusually complicated estate tax case the sole issue is the amount of the marital deduction allowed by Section 2056 of the Internal Revenue Code of 1954 * * *." The intricate algebraic formulae and the arithmetical backing and filling required to compute the tax attest to this complexity. See, e. g., 1 CCH Fed. Est. & Gift Tax Rep., ¶ 2090, at 3056–3087, dealing with the valuation of the marital deduction.

By this decision construing paragraph "ONE" to direct that the proration laws of Connecticut do not apply, we do not intend to foreclose the executor or the Government from making such adjustments or revisions in the federal estate tax as may be necessary to give full advantage to the estate of the marital deduction as it may be properly computed in accordance with such construction.

The judgment of the District Court is reversed.